

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Antonio Vázquez Vélez<br><br>Peticionario<br>v.<br><br>Carelyn Caro Moreno en Representación del menor A.Y.V.C.; Daniel Valentín Rodríguez<br><br>Recurridos | Certiorari<br><br>2011 TSPR 133<br><br>182 DPR \_\_\_\_ |

Número del Caso: AC - 2009 - 89


Fecha: 14 de septiembre de 2011


Tribunal de Apelaciones:

      Región Judicial de Ponce Panel VIII

Juez Ponente:

      Hon. Carlos Rodríguez Muñiz


Abogado de la Parte Peticionaria:

      Lcdo. Fernando J. Nieves Camacho


Abogado de la Parte Recurrida:

      Lcdo. Alberto Rafols Van Derdys


Oficina de la Procuradora General:

      Lcda. Celia M. Molano Flores
      Procuradora General Auxiliar


Materia: Impugnación de Filiación

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio Vázquez Vélez                                   Certiorari

     Peticionario

        v.

                              AC-2008-0089

Carelyn Caro Moreno en representación del menor A.Y.V.C.; Daniel Valentín Rodríguez

     Recurridos


Opinión del Tribunal emitida por el Juez Asociado Señor Rivera García

En San Juan, Puerto Rico, a 14 de septiembre de 2011.

La controversia medular en el presente caso gira en torno a si caducó o no una acción de impugnación de filiación matrimonial por inexactitud del vínculo biológico. Durante la pendencia del recurso de epígrafe ante este Tribunal, la Asamblea Legislativa aprobó la Ley Núm. 215 de 29 de diciembre de 2009, mediante la cual se modificaron los términos dispuestos en el Art. 117 del Código Civil, 31 L.P.R.A. sec. 465, para impugnar la presunción de paternidad o maternidad. Así, nos corresponde examinar el efecto que tiene el referido estatuto sobre los casos aún pendientes ante los tribunales al momento de su aprobación y entrada en vigor.

I

El Sr. Antonio Vázquez Vélez y la Sra. Carelyn Caro Moreno contrajeron matrimonio en febrero de 2002. El 10 de octubre de 2005, durante la vigencia del matrimonio, la señora Caro Moreno dio a luz al menor A.Y.V.C. Toda vez que al momento del nacimiento el matrimonio convivía, el señor Vázquez Vélez aceptó la paternidad del menor y lo registró como su hijo en el Registro Demográfico.

Posteriormente, en junio de 2006 el señor Vázquez Vélez y la señora Caro Moreno se divorciaron por la causal de mutuo consentimiento. Un mes después, el 27 de julio de 2006, el señor Vázquez Vélez se realizó, junto a su hijo A.Y.V.C., una prueba de histocompatibilidad (ADN) para corroborar la paternidad sobre el menor. El referido examen reflejó un cero por ciento de compatibilidad entre ambos, lo que indicaba que el menor A.Y.V.C. no era hijo biológico suyo.[1]

Así las cosas, el 1 de septiembre de 2006 el señor Vázquez Vélez presentó una demanda de impugnación de paternidad en contra de la señora Caro Moreno, el menor A.Y.V.C. y el Sr. Daniel Valentín Rodríguez. Éste alegó que luego de disuelto el matrimonio, advino en conocimiento que mientras estuvo destacado en Irak como policía militar en el año 2003, su exesposa, la señora Caro Moreno, inició una relación extramatrimonial con el señor Valentín Rodríguez. Añadió que ante tal

---

[1] Informe de Prueba DNA de Paternidad, 1 de agosto de 2006, Apéndice del recurso, pág. 51.

información, se sometió junto al menor A.Y.V.C. a una prueba de ADN que arrojó un resultado negativo. Adujo que una vez confrontó a su exesposa con dicho resultado, ésta admitió que el padre biológico del menor es el señor Valentín Rodríguez.

La señora Caro Moreno, por su parte, presentó una moción de desestimación. En síntesis, argumentó que la causa de acción para impugnar la filiación del menor A.Y.V.C. había caducado por haber transcurrido más de tres meses desde la inscripción del menor, según provisto por el Art. 117 del Código Civil, *supra*. También alegó que la controversia sobre filiación era cosa juzgada. Al respecto, indicó que el señor Vázquez Vélez intentó impugnar la paternidad del menor dentro del pleito de divorcio, pero el tribunal denegó su petición debido a que los términos para tal acción legal habían caducado.

Oportunamente, el señor Vázquez Vélez se opuso a la solicitud de desestimación. Su argumentación se centró en un planteamiento de inconstitucionalidad del Art. 117 del Código Civil, *supra*. En lo pertinente, adujo que el término establecido en el referido artículo discriminaba contra el padre presunto, toda vez que la acción de impugnación subsidiaria que ostenta el hijo no está sujeta a plazo alguno de caducidad mientras el padre biológico viva.

Luego de varios trámites procesales, el 21 de diciembre de 2007 el Tribunal de Primera Instancia dictó

una sentencia mediante la cual declaró No Ha Lugar la demanda incoada. Razonó que a tenor con la ley y la jurisprudencia vigente en ese momento, el término de caducidad para impugnar la legitimidad de un hijo inicia desde el momento del nacimiento o de la inscripción del menor. En vista que la demanda en el caso de autos se presentó luego de transcurrido el plazo de caducidad de tres meses dispuesto en el citado artículo para los esposos que se encuentren en Puerto Rico, el foro primario concluyó que la causa de acción de impugnación de filiación había caducado.

Inconforme, el señor Vázquez Vélez apeló el dictamen ante el Tribunal de Apelaciones. Mediante sentencia emitida el 14 de agosto de 2008, el foro apelativo intermedio confirmó la determinación apelada.

El señor Vázquez Vélez, todavía insatisfecho, acude ante nos mediante el recurso de *certiorari* de epígrafe.[2] En lo pertinente, éste nos plantea los señalamientos de error siguientes:

> **Erró el Honorable Tribunal de Apelaciones al confirmar la Sentencia emitida por el Tribunal de Primera Instancia, en la cual se declaró sin lugar la demanda sobre Impugnación de Filiación, habiéndose demostrado mediante prueba científica la imposibilidad de paternidad.**
>
> **Se impugna la constitucionalidad del art[í]culo 113 y el art[í]culo 117 del C[ó]digo Civil de Puerto Rico, (31 L.P.R.A. 461, 464), al establecer clasificación discriminatoria por razón del estado civil y sexo; así cómo [sic] lesionar derechos propietarios.**

---

[2] El 1 de mayo de 2009 emitimos una Resolución en la cual acogimos el recurso de apelación como uno de *certiorari*.

**En el presente caso es de aplicación la Soldiers and Sailors Civil Relief Act de 1940, enmendada el 19 de diciembre de 2003, [m]ediante la ley HR100, Servicemembers Civil Relief Act.**

Examinado el recurso, acordamos expedir el auto de *certiorari* solicitado y le ordenamos a las partes presentar sus respectivos alegatos. El señor Vázquez Vélez y la Procuradora General comparecieron en cumplimiento con lo ordenado. No obstante, la señora Caro Moreno falló en presentar su alegato, por lo que el caso quedó sometido sin su comparecencia. Así, procedemos a resolver.

## II

## A

La filiación es la "condición a la cual una persona atribuye el hecho de tener a otra u otras por progenitores suyos; es un **hecho biológico** consistente en la procreación de una persona por otras, una inicial **realidad biológica** recogida y regulada por el ordenamiento jurídico con el fin de distribuir derechos y obligaciones". Sánchez v. Sánchez, 154 D.P.R. 645, 660 (2001), citando a L. Díez-Picazo y A. Gullón, Sistema de Derecho Civil, 7ma ed., Madrid, Ed. Tecnos, 1997, Vol. IV, pág. 249.[3] Esta definición claramente evidencia el fin principal de la figura de la filiación, a saber: procurar reflejar el vínculo biológico que origina el hecho de la procreación.

---

[3] Véase, también, Mayol v. Torres, 164 D.P.R. 517, 529 (2005).

Álvareztorre Muñiz v. Sorani Jiménez, 175 D.P.R. 398, 410-411 (2009).

Empero, la realidad biológica perseguida no siempre va a coincidir con el vínculo jurídico establecido mediante la figura de la filiación. En ese sentido, hemos reconocido que puede darse una filiación biológica, aunque no jurídica, cuando no conste quiénes son los padres de una persona, o viceversa -una relación jurídica, pero no biológica- cuando la persona que figura como padre jurídico no lo sea biológicamente, tal y como ocurre en el caso de la filiación adoptiva. Álvareztorre Muñiz v. Sorani Jiménez, supra, pág. 411; Mayol v. Torres, 164 D.P.R. 517, 532 (2005); R.E. Ortega-Vélez, La Filiación: Apuntes y Jurisprudencia, San Juan, Ed. Scisco, 1997, pág. 5. Ello denota y reafirma que aun cuando el elemento biológico es fundamental en la determinación de la filiación, éste no es el único criterio que incide en el establecimiento de una filiación jurídica. Mayol v. Torres, supra, pág. 531; Castro v. Negrón, 159 D.P.R. 568, 580 (2003).

Así, pues, definitivamente la determinación de la filiación es un asunto complejo y en ocasiones incierto, particularmente cuando se refiere a la paternidad de una persona. Castro v. Negrón, supra, pág. 581; J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1985, T. IV, págs. 190-191. A pesar de ello, el efecto y la trascendencia de la filiación en el ámbito

moral, patrimonial y jurídico de los padres e hijos, le confiere un alto grado de importancia para el Estado y la sociedad.[4]   Por tal motivo, el ordenamiento jurídico intenta superar estas dificultades mediante la adopción de varios métodos sobre los cuales pueda establecerse la filiación, a saber: el matrimonial y extramatrimonial. Álvareztorre Muñiz v. Sorani Jiménez, supra, pág. 411; González Rosado v. Echevarría Muñiz, 169 D.P.R. 554, 563 (2006).

La filiación matrimonial es aquella que se determina a base de un supuesto de hecho evidente: el matrimonio.[5] El ordenamiento jurídico ha establecido dos presunciones de paternidad en torno a la existencia de un matrimonio. Así, en nuestra jurisdicción "se presumen hijos del marido de la mujer casada" los siguientes: (1) aquellos nacidos durante el matrimonio; y (2) los nacidos dentro de los 300 días siguientes a la disolución del matrimonio. Art. 113 del Código Civil, 31 L.P.R.A. sec. 461.   Estas presunciones son relativas o *juris tantum*, por lo que pueden ser rebatidas mediante prueba que acredite de forma

---

[4] La filiación incide sobre múltiples aspectos de la vida de los individuos que conforman una familia, toda vez que de ella se derivan y concretizan los apellidos, el derecho a alimentos, el derecho sucesorio, la patria potestad, entre otras. Asimismo, de la filiación establecida se derivan incompatibilidades para ejercer ciertas funciones (juez, árbitro, perito, notario, etc.), así como posibles consecuencias vinculadas al derecho penal (delito de incesto, abandono de menores y personas de edad avanzada, entre otros). Véanse: Mayol v. Torres, supra, págs. 530-531; Castro v. Negrón, 159 D.P.R. 568, 581 (2003); J. Castán Tobeñas, Derecho Civil Español, Común y Foral, 10ma ed., Madrid, Ed. Reus, 1995, T. 5, Vol. II, pág. 20; R.E. Ortega-Vélez, La Filiación: Apuntes y Jurisprudencia, San Juan, Ed. Scisco, 1997, pág. 11.

[5] Véase J. Castán Tobeñas, op. cit., pág. 93.

fehaciente que el marido no es el padre biológico del hijo putativo.[6]

La filiación no matrimonial, por su parte, surge cuando los padres no están casados entre sí al momento de la concepción o del nacimiento, ni contraen matrimonio con posterioridad al nacimiento.[7] J.L. Lacruz Berdejo, F.A. Sancho Rebullida y otros, Elementos de Derecho Civil, 2da ed., Madrid, Ed. Dykinson, 2005, T. IV, pág. 329. Toda vez que bajo estos supuestos fácticos no se reconoce presunción alguna sobre paternidad, la filiación extramatrimonial sólo puede establecerse mediante el reconocimiento voluntario o por una sentencia judicial. Puig Brutau, op. cit., pág. 198; Ortega-Vélez, op. cit., pág. 37.[8] Consecuentemente, los hijos nacidos bajo las mencionadas circunstancias adquieren la condición de hijo cuando el padre lo reconoce como tal o el tribunal así lo determina. Véase Castro v. Negrón, supra, pág. 584.

Independiente de la forma en que se determine la filiación, una vez ésta se adquiere, los hijos pasan a ser parte de "un mismo y único grupo: hijos". Castro v. Negrón, supra, pág. 585; Almodóvar v. Méndez Román, 125 D.P.R. 218, 251-252 (1990). Ello significa que todo individuo que obtenga la condición de hijo, ya sea por la

---

[6] Íd, pág. 115. Véase, también, Mayol v. Torres, supra, pág. 550.

[7] El Art. 120 del Código Civil, 31 L.P.R.A. sec. 482, dispone que los hijos habidos fuera del matrimonio quedarán legitimados una vez los padres contraigan matrimonio y dicho acto sea corroborado.

[8] Véase, además, Álvareztorre Muñiz v. Sorani Jiménez, 175 D.P.R. 398, 412, citando a L. Martínez-Calcerrada, El Nuevo Derecho de Familia, 3ra ed., Madrid, [s. Ed.], 1983, T. I, pág. 72.

vía matrimonial o no matrimonial, gozará de igualdad de derechos y obligaciones respecto de sus padres, así como del ordenamiento jurídico. Álvareztorre Muñiz v. Sorani Jiménez, supra, pág. 413; Almodóvar v. Méndez Román, supra, pág. 251.

B

El estado filiatorio de una persona puede ser rebatido mediante una acción judicial de impugnación de filiación.[9] Esta causa de acción va dirigida a negar una filiación establecida por la vía matrimonial o extramatrimonial. Álvareztorre Muñiz v. Sorani Jiménez, supra, pág. 414. En concreto, el ataque a la filiación matrimonial se realiza a través de una acción de impugnación de paternidad, mientras que el rechazo a la filiación extramatrimonial se tramita mediante una acción de impugnación de reconocimiento. Almodóvar v. Méndez Román, supra, págs. 241-242, citando a G.A. Bossert, Régimen legal de filiación y patria potestad: Ley 23.264, 2da ed., Buenos Aires, Ed. Astrea, 1987, págs. 22-23.[10]

La impugnación de paternidad, en particular, tiene dos modalidades, a saber: el desconocimiento riguroso de la paternidad y el desconocimiento simple de ella. González Rosado v. Echevarría Muñiz, supra, págs. 564-565;

_____

[9] El ordenamiento jurídico reconoce tres tipos de acción de filiación, a saber: (1) acción de reclamación de filiación; (2) acción de impugnación de filiación; y (3) acción mixta, la cual pretende obtener la declaración de determinada filiación y refutar otra filiación contradictoria. Álvareztorre Muñiz v. Sorani Jiménez, supra, págs. 413-414; Castro v. Negrón, 159 D.P.R. 568, 586 (2003); Ortega-Vélez, op. cit., pág. 19; Castán Tobeñas, op. cit., pág. 98.

[10] Véase, también, Castro v. Negrón, supra, págs. 586-587.

Almodóvar v. Méndez Román, supra, pág. 242. Mediante la impugnación rigurosa de la paternidad, se ataca directamente la presunción legal de paternidad matrimonial a través de evidencia que excluya el nexo biológico entre el marido y el nacido. Íd. Por su parte, a través de la acción de impugnación simple de paternidad, se rechaza la filiación matrimonial mediante prueba que demuestre que el menor nació después de los 300 días de disuelto el matrimonio. Íd.

El término concedido para interponer una acción de impugnación de filiación, ya sea de paternidad o de reconocimiento, es de caducidad. Álvareztorre Muñiz v. Sorani Jiménez, supra, pág. 416; Castro v. Negrón, supra, págs. 595-596. Ello significa que el plazo disponible no puede ser interrumpido o suspendido, contrario a lo que ocurre con los términos de prescripción. Muñoz v. Ten General, 167 D.P.R. 297, 302 (2006). Consecuentemente, el mero transcurso del tiempo conlleva la extinción automática del derecho a la causa de acción. Íd.; Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. 562, 566 (1966).

La razón primordial para establecer que los términos de impugnación de filiación sean de caducidad es el interés del Estado en evitar la incertidumbre en la relación filiatoria y promover su estabilidad jurídica. Álvareztorre Muñiz v. Sorani Jiménez, supra, pág. 416; González Rosado v. Echevarría Muñiz, supra, pág. 568;

<u>Castro v. Negrón</u>, supra, pág. 596. En consecución con ese mismo fin público, se han fijado unos plazos cortos de caducidad para interponer una causa de acción de impugnación de filiación. <u>Álvareztorre Muñiz v. Sorani Jiménez</u>, supra, pág. 416.[11] Así, pues, si la acción de impugnación de filiación no es promovida dentro del periodo fijado en el ordenamiento jurídico, se considera que el plazo ha caducado, lo que a su vez tiene el efecto de consolidar el *status familiae* del hijo para todos los efectos legales. Íd.; Ortega-Vélez, <u>op. cit.</u>, pág. 21.

C

La acción de impugnación de paternidad se encuentra regulada en el Art. 117 del Código Civil, *supra*. Respecto al término para rebatir la legitimidad de un hijo, el antiguo Art. 117 disponía que la causa de acción debía ejercitarse dentro de los tres meses siguientes a la inscripción del menor en el registro civil, si el marido se hallare en Puerto Rico, o dentro de los seis meses de haber conocido del nacimiento, si se encontrase fuera del país.[12] Art. 117 del Código Civil, 31 L.P.R.A. sec. 465 (ed. 1993).

Esta regulación, evidentemente, no tomaba en consideración el conocimiento o desconocimiento de la realidad biológica en la relación filiatoria para efectos de comenzar a computar el término de caducidad. Ello

---

[11] Véanse, además: <u>Mayol v. Torres</u>, supra, pág. 553; <u>Sánchez v. Sánchez</u>, 154 D.P.R. 645, 669 (2001).

[12] Estos términos fueron modificados mediante la Ley Núm. 215 de 29 de diciembre de 2009.

implicaba que en muchas ocasiones, el plazo para impugnar la filiación iniciaba y caducaba sin que las partes con interés tuviesen conocimiento de la inexactitud de la filiación y, por ende, sin que pudieran incoar una acción judicial de impugnación de filiación. Tales efectos contrastan con el fin ulterior de la figura de la filiación, a saber, reflejar el vínculo biológico que origina el hecho de la procreación. Álvareztorre Muñiz v. Sorani Jiménez, supra, págs. 410-411.

Las jurisdicciones más modernas procuran, en gran medida, que sus ordenamientos jurídicos propicien que la realidad biológica concuerde con la relación jurídica establecida mediante la filiación, sin perder de perspectiva, claro está, la deseabilidad de mantener una seguridad jurídica en aras de la paz familiar. Lacruz Berdejo, op. cit., pág. 308. Este acercamiento combina las dos corrientes reconocidas por la doctrina en cuanto a la filiación, a saber: la teoría *realista* y la *formalista*. Íd. Véase, también, Mayol v. Torres, supra, págs. 532-533.

La teoría *realista*, aun cuando admite que "la filiación jurídica no es mera relación biológica", preconiza la aspiración de llegar a la verdad biológica por la vía judicial en la medida que tal resultado sea posible. Lacruz Berdejo, op. cit., pág. 307.[13] Cónsono con ello, esta teoría, presidida por el llamado *principio de veracidad*, facilita mecanismos jurídicos que allanan el

---

[13] Véase Mayol v. Torres, supra, págs. 532-533.

camino para descubrir la verdadera filiación, tales como: la investigación de la paternidad o maternidad con el fin de declararla, cuando es desconocida, o impugnarla, cuando no es veraz; y la utilización de toda clase de pruebas, incluidas las biológicas. Íd.

De otra parte, la teoría *formalista* de la filiación subordina la realidad biológica y le confiere preeminencia a otros valores o elementos extrínsecos, tales como la paz familiar y la seguridad jurídica. Lacruz Berdejo, op. cit., pág. 308.[14] Esta concepción *formalista* promueve la determinación de la filiación en base a factores como la voluntad unilateral o a ciertas presunciones. Íd. En esa misma línea, esta corriente obstaculiza la investigación de la paternidad fuera de los citados parámetros, particularmente la búsqueda de prueba de la verdadera paternidad biológica. Íd.

Nuestro desarrollo jurisprudencial en materia de filiación ha ido encaminado por un enfoque *realista* que propicie el descubrimiento de la verdadera filiación.[15] En ese contexto, expresamos que "[e]n materia de filiación, el Derecho puertorriqueño ha ido abriendo camino a través de la enmarañada jungla de … tecnicismos de ley **para hacer que brille la verdad y se reconozca a todos los fines legales la relación biológica entre padres e hijos**". (Énfasis suplido.) Sánchez v. Sánchez, supra, pág. 662,

---

[14] Véase Íd., pág. 533.

[15] Véanse: Mayol v. Torres, supra; Castro v. Negrón, supra; Ramos v. Marrero, 116 D.P.R. 357 (1985); Moreno Alvarado v. Moreno Jiménez, 112 D.P.R. 376 (1982).

citando a <u>Ramos v. Marrero</u>, 116 D.P.R. 357, 358 (1985). A pesar de ello, nuestro sistema legal mantuvo un esquema limitado y estricto en cuanto al cómputo del término de caducidad para la acción de impugnación de filiación, regulado en el Art. 117 del Código Civil, *supra*. Conforme a lo indicado previamente, el texto del citado artículo tenía el efecto de consolidar el estado familiar de una persona una vez transcurriera el término de tres meses siguientes a la inscripción del nacido o de seis meses desde el conocimiento del nacimiento, según aplique, independiente de si en ese momento se conocía la inexactitud de la filiación establecida.

En virtud de esa limitación estatutaria, nos hemos visto precisados a desviarnos de la línea *realista* trazada jurisprudencialmente e interpretar restrictivamente el cómputo del término para impugnar la paternidad. Así, en <u>Almodóvar v. Méndez Román</u>, supra, expresamos que una vez transcurridos los plazos estatuidos en el Art. 117 del Código Civil, *supra*, para la impugnación de paternidad, se consolida el estado filiatorio del niño respecto a su padre. Íd., pág. 252. Precisamos que ese efecto era producto de la caducidad de la causa de acción que concede la ley a esos fines. Íd., págs. 252-253.

Posteriormente, en <u>Calo Morales v. Cartagena Calo</u>, 129 D.P.R. 102 (1991), sostuvimos la validez constitucional del Art. 117 del Código Civil, *supra*, y reafirmamos nuestros dictámenes respecto al cómputo de los

términos allí dispuestos. A esos efectos, indicamos que a tenor con la legislación vigente, el plazo de caducidad para impugnar la paternidad comenzaba a contarse "desde la ocurrencia de un suceso cierto y objetivo: la inscripción del nacimiento en el Registro Demográfico" o a partir del conocimiento del nacimiento. Íd., pág. 143. Asimismo, manifestamos que la Asamblea Legislativa siempre tiene la facultad de realizar cualquier modificación al término concedido para impugnar la filiación. Íd., pág. 144.

Recientemente, en González Rosado v. Echevarría Muñiz, supra, tuvimos la oportunidad de analizar cuándo comenzaba a computarse el periodo de caducidad para impugnar un reconocimiento voluntario de paternidad basada en la inexactitud del vínculo. Luego de examinar las acciones de filiación disponibles, la naturaleza de los términos de caducidad y los intereses en conflicto, resolvimos que el plazo para interponer una acción de impugnación de filiación extramatrimonial por inexactitud comenzaría a contar desde la fecha en que se llevó a cabo el reconocimiento. Íd., págs. 569-570.

No obstante, mediante sendos votos disidentes emitidos por el Juez Asociado señor Fuster Berlingeri y la Jueza Asociada señora Fiol Matta, se envió un mensaje claro a favor de la modificación de esa norma. Así, ambos magistrados recomendaron acoger la doctrina española que preceptúa que el plazo de caducidad de la acción de impugnación de filiación comienza a transcurrir una vez se

conoce la realidad biológica que motiva la causa de acción. González Rosado v. Echevarría Muñiz, supra, (Opinión de conformidad y disidente emitida por el Juez Asociado Señor Fuster Berlingeri, pág. 573; Opinión disidente emitida por la Jueza Asociada Señora Fiol Matta, pág.582).

D

Cónsono con las voces disidentes en el caso González Rosado v. Echevarría Muñiz, supra, la Asamblea Legislativa aprobó la Ley Núm. 215 de 29 de diciembre de 2009 (Ley Núm. 215). Mediante esa legislación, se enmendaron las disposiciones legales sobre filiación contenidas en el Código Civil a los fines de atemperarlas a la corriente moderna que favorece la correlación entre la realidad biológica y la jurídica.[16]

En lo pertinente al caso que nos ocupa, la Ley Núm. 215 enmendó los términos para impugnar la presunción de paternidad y la forma para computarlos estatuidos en el Art. 117 del Código Civil, *supra*. Antes de la enmienda, el referido artículo leía como sigue:

> La acción para impugnar la legitimidad del hijo deberá ejercitarse dentro de los tres (3) meses siguientes a la inscripción del nacimiento en el registro si el marido se hallare en Puerto Rico, y de los seis (6) meses si estuviere fuera de Puerto Rico, a contar desde que tuvo conocimiento del nacimiento. 31 L.P.R.A. sec. 465 (ed. 1993).

Luego de la reforma, el Art. 117 del Código Civil, *supra*, preceptúa lo siguiente:

---

[16] Exposición de Motivos, Ley Núm. 215, *supra*.

**La acción para impugnar la presunción de paternidad o de maternidad, por parte del padre legal deberá ejercitarse dentro del plazo de caducidad de seis meses, contados a partir de la fecha de que advenga en conocimiento de la inexactitud de la filiación o a partir de la aprobación de esta Ley, lo que sea mayor.**

La acción para impugnar la presunción de paternidad o maternidad, por parte del padre o la madre biológica(o), así como de la madre legal, deberá ejercitarse dentro del plazo de caducidad de un año, contado a partir de la inscripción del nacimiento del menor en el Registro Demográfico. (Énfasis suplido.) 31 L.P.R.A. sec. 465.

Una lectura comparada de ambos textos refleja varios cambios trascendentales en materia de impugnación de filiación. Primeramente, el nuevo Art. 117 del Código Civil, *supra*, modifica el esquema del trámite para la impugnación de la paternidad o maternidad. En concreto, la actual redacción se aparta del factor de ubicación geográfica del marido para establecer el término de impugnación de filiación y se enfoca en la persona que promueve la reclamación. Así, el artículo vigente estatuye dos términos independientes para impugnar la presunción de paternidad o maternidad en función del individuo que promueve la causa de acción, a saber: (1) el **padre legal** goza de un término de **seis meses** para rebatir tal presunción **por inexactitud de la filiación**, computado a partir del conocimiento de la inexactitud del vínculo o de la aprobación de la ley, lo que fuese mayor; mientras (2) **la madre o el padre biológico y la madre legal** poseen un plazo **un año** para impugnar la referida presunción, contado a partir de la inscripción del nacimiento del

menor en el Registro Demográfico.  Ambos términos son de caducidad.

En segundo lugar, la redacción del nuevo Art. 117 del Código Civil, *supra*, refleja la adopción de una filosofía *realista* de la filiación basada en el principio de veracidad.  A esos efectos, el estatuto recoge la intención de "que la paternidad jurídica se fundamente en la filiación biológica"[17], a la vez que plasma "el derecho de una persona a saber qui[é]n es su verdadero hijo(a) o su verdadero padre o madre".[18]

A tenor con este análisis, resulta palmariamente claro que el legislador acogió y le confirió preeminencia al principio de veracidad en la determinación de la filiación, esto es, que la paternidad jurídica se base en la filiación biológica.  Este interés en que la filiación jurídica reconozca y refleje el verdadero vínculo biológico se consolida con la autorización expresa de la Asamblea Legislativa para aplicar el estatuto retroactivamente a casos de impugnación de filiación pendientes de resolución ante los tribunales.  A esos efectos, el Art. 6 de la Ley Núm. 215, *supra*, establece lo siguiente:

> **Toda acción de impugnación de filiación pendiente ante los tribunales se le aplicará lo dispuesto en esta Ley.**  En los casos previamente resueltos por el Tribunal donde hubiese evidencia fehaciente e indubitada que muestre causa

---

[17] Íd., citando a <u>González Rosado v. Echevarría Muñiz</u>, 169 D.P.R. 554 (2006), (Opinión de conformidad y disidente emitida por el Juez Asociado Señor Fuster Berlingeri).

[18] Exposición de Motivos, Ley Núm. 215, *supra*.

suficiente para llevar la impugnación de paternidad, el promovente podrá radicar nuevamente dicha acción en un término de seis (6) meses a partir de la aprobación de esta Ley. (Énfasis suplido.)

La transcrita disposición legal, en unión a las expresiones vertidas por a la Asamblea Legislativa en la Exposición de Motivos del estatuto[19], constata de forma indiscutible la intención del legislador de extender la aplicación de los nuevos términos y las formas de computarlos a aquellos pleitos pendientes de adjudicación ante los tribunales del país al momento de entrar en vigor la Ley Núm. 215.[20]

III

La controversia medular en el presente caso gira en torno al término disponible para presentar una acción de impugnación de paternidad fundamentada en la inexactitud de la filiación. Según expusimos, el peticionario impugnó la filiación del menor A.Y.V.C., nacido durante la vigencia de su matrimonio con la señora Caro Moreno, once meses después de su nacimiento y de la inscripción del menor en el Registro Demográfico. Toda vez que el pleito en cuestión se presentó luego de transcurrido el término

---

[19] En cuanto a la aplicación retroactiva de la Ley Núm. 215, la Exposición de Motivos reza como sigue:

**"Así pues, como medida de derecho transitorio, mediante esta iniciativa legislativa, se extiende la norma adoptada en esta Ley, a todos aquellos casos que estén presentados ante nuestros tribunales, impugnaciones de paternidad o maternidad, a la fecha de entrada en vigencia de esta Ley"**. (Énfasis suplido.) Íd.

[20] Negrón Ramos v. Alvarado Cruz, 2011 T.S.P.R. 1, 180 D.P.R. ___ (2011) (Opinión de Conformidad emitida por la Juez Asociada Señora Rodríguez Rodríguez a la que se une el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta).

de tres meses dispuesto a esos fines en el antiguo Art. 117 del Código Civil, *supra*, (ed. 1993), tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones resolvieron que la causa de acción había caducado.

Posterior a la presentación del recurso que nos ocupa y aún pendiente de adjudicación por este Foro, la Asamblea Legislativa aprobó la Ley Núm. 215. Mediante el citado estatuto, se enmendaron los términos estatuidos en el Art. 117 del Código Civil, *supra*, para impugnar la filiación. En lo particular a la causa de acción para rebatir la presunción de paternidad por inexactitud de la filiación, la Ley Núm. 215 concede un plazo de seis meses para instar el pleito contado a partir del conocimiento de la ausencia del vínculo biológico o desde la aprobación de esa ley, lo que fuese mayor. Asimismo, la citada Ley Núm. 215 establece, como medida de derecho transitorio, que las disposiciones del estatuto aplicarán a "toda acción de impugnación de filiación pendiente ante los tribunales". Art. 6, Ley Núm. 215, *supra*.

Conforme a las disposiciones de derecho transitorio contenidas en la Ley Núm. 215, resulta evidente que el referido estatuto es aplicable al caso de autos. Ello es así debido a que el pleito estaba pendiente de adjudicación ante este Foro al momento de haber entrado en vigencia la ley. Consecuentemente, procede revocar el dictamen emitido por el Tribunal de Apelaciones mediante el cual confirmó la determinación del foro primario de

denegar la demanda sobre impugnación de filiación presentada por el peticionario debido a la caducidad de la causa de acción.

Resuelto lo anterior, es innecesario entrar a discutir el planteamiento de inconstitucionalidad del antiguo Art. 117 del Código Civil, *supra*, (ed. 1993), por académico. Igualmente, es impertinente examinar la aplicabilidad del *Servicemembers Civil Relief Act*, toda vez que la causa de acción de impugnación de filiación se considera en tiempo en virtud de la Ley Núm. 215.

IV

Por los fundamentos antes expuestos, revocamos la Sentencia dictada por el Tribunal de Apelaciones. Devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio Vázquez Vélez

    Peticionario

       v.

Carelyn Caro Moreno en representación del menor A.Y.V.C.; Daniel Valentín Rodríguez

    Recurridos

Certiorari

AC-2008-0089

SENTENCIA

En San Juan, Puerto Rico, a 14 de septiembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, revocamos la Sentencia dictada por el Tribunal de Apelaciones. Devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo resuelto por este Foro.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre con opinión escrita.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio Vázquez Vélez

    Peticionario

       v.

                              AC-2008-089

Carelyn Caro Moreno en representación del menor A.Y.V.C.; Daniel Valentín Rodríguez

    Recurridos

Opinión concurrente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 14 de septiembre de 2011

La controversia en este caso es sumamente sencilla. Requiere que nos planteemos qué efecto tuvo la Ley Núm. 215 de 29 de diciembre de 2009 (Ley Núm. 215), que extendió el término para la acción de impugnación de filiación dispuesto en el Código Civil, sobre aquellos casos pendientes ante los tribunales a la fecha de su aprobación.

Hace unos meses tuvimos este mismo asunto ante nuestra consideración y llegamos a la misma conclusión que ahora valida la mayoría. Y es que la determinación de la mayoría en el caso de

epígrafe es la única posible ante el claro texto de la Ley Núm. 215.  En *Negrón Ramos v. Alvarado Cruz*, res. 5 de enero de 2011, 180 DPR ___, 2011 TSPR 1, se dispuso, mediante sentencia, lo mismo que hoy pauta el Tribunal.

En la Opinión de conformidad que suscribí en *Negrón Ramos*, expresé mis razones para concluir lo mismo que hoy resuelve la mayoría.  Me reitero en lo expresado en aquella ocasión.  Cito por lo tanto, extensamente, de mi Opinión de conformidad:

La Ley Núm. 215 de 29 de diciembre de 2009, enmendó el Art. 117 del Código Civil para modificar el término de caducidad para ejercitar la acción de impugnación de presunción de paternidad de los hijos, así como la manera en que se computa este término.  Previo a la enmienda, el Art. 117 disponía lo siguiente:

> La acción para impugnar la legitimidad del hijo deberá ejercitarse **dentro de los tres meses siguientes a la inscripción del nacimiento en el registro si el marido se hallare en Puerto Rico**, y de los seis meses si estuviere fuera de Puerto Rico, a contar desde que tuvo conocimiento del nacimiento. (Énfasis nuestro.)

Del texto transcrito se desprende que en aquellas situaciones en que el marido "se halla[ ] en Puerto Rico", como ocurre en el de autos, su término para impugnar la paternidad de su presunto hijo es de tres meses.  Este término es de caducidad apreciable de oficio, según hemos dispuesto reiteradamente.  *González v.*

*Echevarría*, 169 D.P.R. 554, 561 (2006); *Santiago Ojeda v. Cruz Maldonado*, 109 D.P.R. 143, 146 (1979).

Por otro lado, la Ley Núm. 215 modificó sustancialmente el contenido del Artículo 117 del Código Civil. Éste ahora lee de la siguiente manera:

> La acción para impugnar la presunción de paternidad o de maternidad, **por parte del padre legal deberá ejercitarse dentro del plazo de caducidad de seis meses, contados a partir de la fecha de [sic] que advenga en conocimiento de la inexactitud de la filiación o a partir de la aprobación de esta Ley, lo que sea mayor.** (Énfasis nuestro.)

31 L.P.R.A. Sec. 465.

Como se advierte, cambian dos cosas. Por un lado, el término de tres meses se aumentó a seis, pero más importante, se modificó la forma como se computa este término. Así, para marcar el comienzo del cómputo del término ya no se habrá de partir de la inscripción del menor en el Registro Demográfico cuando el padre se encontrara en Puerto Rico, o desde que éste se enterara del nacimiento si se encontrara fuera; ahora, su decurso se da "a partir de la fecha de [sic] que se advenga en conocimiento de la inexactitud de la filiación o a partir de la aprobación de esta Ley, lo que sea mayor." Con esta determinación, la Asamblea Legislativa quiso cerciorarse de que "la realidad jurídica [fuese

igual a] la biológica", y expresó su deseo de "armoniza[r] nuestro ordenamiento jurídico con los avances científicos y codificar normas dictadas por vía de jurisprudencia." Exposición de Motivos de la Ley Núm. 215.

La Asamblea Legislativa quiso, además, extender la norma establecida "a todos los casos que estén presentados ante nuestros tribunales, impugnaciones de paternidad o de maternidad, a la fecha de entrada en vigencia de esta Ley." Exposición de Motivos de la Ley Núm. 215. Ello, "[c]omo medida de derecho transitorio...." Informe de la Cámara de Representantes, Comisión de lo Jurídico, pág. 3. En lo pertinente, la primera oración del Art. 6 de la Ley Núm. 215 dispone lo siguiente: "Toda acción de impugnación de filiación pendiente ante los tribunales se aplicará lo dispuesta en esta Ley." Esta disposición del Art. 6 no deja duda de que la intención del legislador fue que el nuevo plazo para impugnar la paternidad y la nueva forma de computarlo aplicasen a aquellos casos que se encontraran ante la consideración de los tribunales del país al momento de aprobarse y entrar en vigor la Ley Núm. 215.

Delimitado el marco jurídico que debemos aplicar en este caso, sólo nos resta repasar los

hechos ante nuestra consideración para resolver esta controversia.

[…]

Iniciamos señalando que conforme el estado de derecho vigente al momento de instarse la demanda de autos, no hay duda de que el término con que contaba el peticionario para impugnar la paternidad de dos de sus presuntos hijos había caducado, por lo que la determinación de los foros inferiores fue la correcta. Ahora bien, en el transcurso del litigio el derecho aplicable cambió. Veamos.

Como se señaló inicialmente, estando el caso de autos pendiente de atender por este Tribunal, la Asamblea Legislativa aprobó la Ley Núm. 215. La nueva ley modificó el término para impugnar la paternidad y como éste se computa y además, proveyó que lo allí dispuesto fuese aplicable a todos los casos que se estuviesen litigando ante los tribunales. Con lo cual, no cabe otra conclusión que el caso de autos debe evaluarse conforme lo dispuesto en la Ley Núm. 215.

Habida cuenta que el Tribunal de Primera Instancia desestimó la reclamación de impugnación de paternidad por haber caducado el término para instarla conforme el estado de derecho vigente en ese momento, y ante lo dispuesto en la Ley Núm. 215, que aplica a casos como los de autos,

procede revocar al foro de instancia y devolver el caso a este foro para que se reinicien los procedimientos desestimados. Reiniciado el proceso, todas las partes concernidas tendrán la oportunidad de hacer los planteamientos que estimen procedentes y el foro primario los habrá de ponderar y resolver conforme estime correcto.

Por los fundamentos que expresé en *Negrón Ramos v. Alvarado Cruz, ante,* considero correcto el dictamen en este caso.

Anabelle Rodríguez Rodríguez
Juez Asociada