Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| LIZMAYRA EPSTEINS MORALES

Recurrida


V.


**KENNETTE FLORES RUPIZA**, LEONCIO ALONSO GONZÁLEZ


Peticionario | KLCE202400108 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez

Caso Núm.: MZ2023RF00356

Sobre: Filiación – Impugnación de Reconocimiento Voluntario, Filiación – Reconocimiento Voluntario Tardío, Alimentos – Menores de Edad, Custodia – Monoparental o Compartida |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*


### SENTENCIA

En San Juan, Puerto Rico, a 19 de marzo de 2024.

El 25 de enero de 2024, compareció ante este Tribunal de Apelaciones, el señor Kennette Flores Rupiza (en adelante, señor Flores Rupiza o parte peticionaria), por medio de *Recurso de Certiorari*, en el que nos solicita que revisemos la *Orden* emitida el 20 de diciembre de 2023 y notificada el 26 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. Mediante el aludido dictamen, el foro *a quo*, declaró No Ha Lugar la *Moción Solicitando Desestimación* presentada el 5 de agosto de 2023 por el señor Flores Rupiza.

Anticipamos que, por los fundamentos que en adelante se esbozan, se expide el recurso de *certiorari* y se revoca el dictamen recurrido.

Número Identificador

SEN2024 _____

**I**

Los eventos fácticos y procesales que dan lugar a la controversia de epígrafe son los que en adelante se esbozan.

Conforme surge del expediente ante nuestra consideración, la señora Lizmayra Epsteins Morales (en adelante, señora Epsteins Morales o parte recurrida) es la madre de la menor Keylee Rose Flores Epsteins (en adelante, KRFE), quien actualmente tiene seis (6) años de edad.

El 2 de junio de 2023 la señora Epsteins Morales interpuso ante el Tribunal de Primera Instancia una *Demanda* contra el señor Flores Rupiza y el señor Leoncio Alonso González (en adelante, señor Alonso González), a los fines de impugnar la filiación de la menor KRFE con el señor Flores Rupiza, establecida mediante *Sentencia* emitida en el caso ISRF201900676, el 24 de enero de 2020.[1] Solicitó, además, que el foro *a quo* estableciera una nueva filiación a la menor KRFE con el señor Alonso González. Este último, fue debidamente emplazado el 12 de junio de 2023.

El señor Flores Rupiza fue emplazado ese mismo día, 12 de junio de 2023, y al día siguiente, solicitó prórroga para contestar la demanda. Subsiguientemente, el 5 de agosto de 2023, este incoó *Moción Solicitando Desestimación*.

Por otro lado, en atención a la solicitud de la señora Epsteins Morales del 26 de julio de 2023, el foro primario le anotó la rebeldía al señor Leoncio Alonso González mediante *Orden* notificada el 8 de agosto de 2023.

---

[1] No surge del expediente ante nos que la parte recurrida haya emplazado a la menor, conforme a la exigencia de la Ley 99-2018 mediante la cual se enmendó el Artículo 117 del Código Civil de 1930, aplicable al caso de marras. En particular, el aludido Artículo 117 dispone que: "Cuando la acción de impugnación se refiere a un hijo que no ha alcanzado la mayoría de edad, el Tribunal velará por el interés prioritario del Estado de proteger la niñez sobre el interés del presunto padre o de la presunta madre que ejercite la acción de impugnar filiación de un hijo que no ha alcanzado la mayoría de edad, deberá emplazar al menor de acuerdo al ordenamiento jurídico vigente."

Ese mismo día 8 de agosto de 2023, el foro primario le concedió término a la señora Epsteins Morales para que expresara su posición en torno a la *Moción Solicitando Desestimación* interpuesta por el peticionario. En atención a lo ordenado, el 18 de agosto de 2023, la parte recurrida presentó *Moción en Oposición Desestimación.*

Posteriormente, el 19 de septiembre de 2023, el señor Alonso González presentó *Contestación a la Demanda por Derecho Propio* y en esa misma fecha, presentó una *Moción Informativa, Solicitando Reconsideración y se Deje sin Efecto Anotación de Rebeldía.*

Acaecidos varios trámites procesales para la designación de un Defensor Judicial, el 8 de noviembre de 2023, el foro *a quo* designó a la Lcda. Wanda I. Ruiz López como Defensora Judicial de la menor KRFE (en adelante, la Defensora Judicial).

Así las cosas, el 21 de noviembre de 2023, la Defensora Judicial asumió su encomienda mediante *Moción Asumiendo Representación Legal* y posteriormente, el 18 de diciembre de 2023, incoó *Posición en Cumplimiento de Orden.* En apretada síntesis, la Defensora Judicial coincidió con la señora Epsteins Morales, en que el pleito de impugnación de paternidad fue incoado dentro del término de un año desde que esta última tuvo indicios o conoció hechos que le crearon una duda verdadera sobre la inexactitud de la filiación de la menor. Consecuentemente, le solicitó a la primera instancia judicial que declara No Ha Lugar la *Moción Solicitando Desestimación* interpuesta por el señor Flores Rupiza y que proveyera lo que en derecho procediera.

El 20 de diciembre de 2023 y notificada el 26 de diciembre de 2023, el foro recurrido emitió la *Orden* recurrida, en la cual dispuso:

SE DECLARA CON LUGAR LO SOLICITADO POR DEFENSORA JUDICIAL DE MENOR.
NO SE DESESTIMAR[Á] LA DEMANDA.

SE ORDENA A LOS ABOGADOS DE LAS PARTES Y A LA DEFENSORA, ESCOGER POR ACUERDO UN LABORATORIO PARA EFECTUARSE LAS PRUEBAS DE A.D.N. A TODAS LAS PARTES Y A LA MENOR.

EN 10 D[Í]AS INFORMAR[Á]N EL D[Í]A Y NOMBRE DEL LABORATORIO EN QUE SE EFECTUAR[Á]N LA PRUEBA CUYO RESULTADO SER[Á] VINCULANTE Y SE SOMETER[Á] AL TRIBUNAL EL MISMO POR EL LABORATORIO.

EL COSTO DE LA PRUEBA DE LA DEMANDANTE Y LA MENOR, SER[Á] CUBIERTO POR ESTA Y DE RESULTAR CIERTA LA IMPUGNACI[Ó]N ALEGADA, APLICAR[Á] LO ESTABLECIDO EN LAS REGLAS DE EVIDENCIA EN CUANTO AL REEMBOLSO DE DICHO COSTO, UNA VEZ EVIDENCIADO.

LOS CO DEMANDADOS PAGAR[Á]N CADA UNO LA PORCI[Ó]N QUE LES CORRESPONDA DE SUS RESPECTIVAS PRUEBAS.

Inconforme con la determinación del foro *a quo*, la parte peticionaria acudió ante este foro revisor mediante recurso de *Certiorari* y esgrimió los siguientes señalamientos de error:

PRIMER SEÑALAMIENTO DE ERROR:
Erró el Tribunal de Primera Instancia al declarar NO HA LUGAR de plano nuestra solicitud de desestimación por caducidad, cuando a la luz de los hechos incontrovertidos del presente caso y el derecho aplicable, surge claramente que el término para la acción presentada había caducado.

SEGUNDO SEÑALAMIENTO DE ERROR:
Erró el Tribunal de Primera Instancia al declarar NO HA LUGAR de plano la solicitud de desestimación presentada y no señalar una vista evidenciaria para determinar si la acción ha caducado.

Examinado el recurso de *Certiorari* presentado por la parte peticionaria, mediante *Resolución* del 30 de enero de 2024, le ordenamos a la parte peticionaria que, en o antes del viernes 2 de febrero de 2024, nos acreditara haber notificado copia del recurso de epígrafe al Tribunal de Primera Instancia de conformidad con la Regla 33 (A), 4 LPRA Ap. XXII-B, R.33(A), y a la parte recurrida, conforme a lo dispuesto en la Regla 33 (B), 4 LPRA Ap. XXII-B, R.33(B) del Reglamento de este Tribunal de Apelaciones, así como a la Defensora Judicial. Le apercibimos que, el incumplimiento con lo ordenado daría lugar a la desestimación del recurso.

Asimismo, le concedimos a la parte recurrida hasta el 6 de febrero de 2024, para que se expresara en torno al recurso de marras. Dispusimos que, transcurrido el término dispuesto, el recurso se entendería perfeccionado para su adjudicación final.

En cumplimiento con lo ordenado, compareció la parte recurrida mediante escrito intitulado *Cumplimiento de Orden* en el cual nos peticionó que confirmáramos la *Orden* recurrida.

De otra parte, mediante *Resolución* del 9 de febrero de 2023, le ordenamos a la Defensora Judicial que en o antes del 20 de febrero de 2024, mostrara causa por la cual no debíamos revocar el dictamen recurrido. En cumplimiento con lo ordenado, el 23 de febrero de 2024, la Defensora Judicial de la menor KRFE, interpuso ante este foro apelativo posición en torno al recurso.

Con el beneficio de la comparecencia de las partes, nos encontramos en posición de disponer del recurso ante nuestra consideración.

**II**

### A. Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). La expedición del auto de *certiorari* descansa en la sana discreción del foro apelativo. *Torres González v. Zaragoza Meléndez*, supra. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4

LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, supra, pág. 372. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[2]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no

---

[2] 4 LPRA Ap. XXII-B, R. 40.

ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, *supra,* dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una **resolución** u **orden** bajo las **Reglas 56 y 57** o de la **denegatoria de una moción de carácter dispositivo**. No obstante, y por **excepción** a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar **órdenes** o **resoluciones interlocutorias** dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la **admisibilidad de testigos de hechos o peritos esenciales**, asuntos relativos a **privilegios evidenciarios**, **anotaciones de rebeldía**, en casos de **relaciones de familia**, en casos que revistan **interés público** o en cualquier otra situación en la cual esperar a la apelación constituiría un **fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro). Regla 52.1 de Procedimiento Civil, *supra.*

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y

rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Impugnación de Paternidad

Nuestro más Alto Foro ha definido la filiación como "la situación que, dentro de una familia, le asigna el haber sido engendrada en ella o el estar en ella en virtud de la adopción o de otro hecho legalmente suficiente al efecto. *Vázquez Vélez v. Caro Moreno,* 182 DPR 803 (2011); *González Rosado v. Echevarría Muñiz,* 169 DPR 554 (2006); *Castro v. Negrón,* 159 DPR 568 (2003). Esta relación jurídica procede del vínculo natural entre padres e hijos. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 180 (2022); *RPR & BJJ Ex Parte*, 207 DPR 389, 410 (2021); *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 475 (2019). El Tribunal Supremo ha expresado además que, la filiación "sintetiza el conjunto de relaciones jurídicas, que determinadas por la paternidad y la maternidad, vinculan a los padres con los hijos dentro de la familia". *RPR & BJJ Ex Parte*, supra, pág. 410; *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 180.

La Ley Núm. 215 de 29 de diciembre de 2009, *Ley para Enmendar los Artículos 113-117 del Código Civil, 31 LPRA secs. 461-465*, fue aprobada con el propósito de enmendar el Código Civil de

1930[3], en particular, reguló la impugnación de la filiación, y enmendó varios artículos referentes a la acción de impugnación de paternidad. *Bonilla Ramos v. Dávila Medina,* 185 DPR 667 (2012). El Art. 113 del Código Civil de 1930[4] establecía que se presumen del esposo de la mujer casada los nacidos durante el matrimonio, y que, el reconocimiento voluntario crea una presunción de paternidad a favor del reconocedor. 31 LPRA sec. 461; *RPR & BJJ Ex Parte*, supra, pág. 411. Por otro lado, el Art. 114 establece que las siguientes personas están legitimadas para impugnar la presunción de paternidad: el presunto padre, el padre biológico, la madre y el hijo, por sí o por su representante legal. Art. 114 del Código Civil de 1930[5], 31 LPRA sec. 462. La presunción de paternidad podrá ser impugnada con cualquier prueba idónea y concluyente que la revirtiera. *RPR & BJJ Ex Parte*, supra, pág. 413.

El Art. 117 del Código Civil de 1930[6], establece que la acción para impugnar la presunción de paternidad por parte del padre legal deberá ejercitarse dentro del plazo de caducidad de seis (6) meses, a partir de la fecha en la que advenga en conocimiento de la inexactitud de la filiación. 31 LPRA sec. 465; *RPR & BJJ Ex Parte*, supra, pág. 415; *Rivera Marrero v. Santiago Martínez*, supra, págs. 477-478. Nuestra Máxima Curia ha dispuesto que, para que una acción de impugnación prospere, es necesario que esta se presente oportunamente y que, esté basada en alegaciones específicas que, siendo tomadas como ciertas, demuestren a satisfacción del juzgador que existe una duda real sobre la exactitud de la filiación.

---

[3] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, los hechos que dan base a esta tuvieron lugar antes de la aprobación del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendado.
[4] Equivalente al Art. 568 del Código Civil de 2020, 31 LPRA sec. 7122.
[5] Equivalente al Art. 573 del Código Civil de 2020, 31 LPRA sec. 7127.
[6] Equivalente al Art. 575 del Código Civil de 2020, 31 LPRA sec. 7129, este nuevo código dispone un plazo distinto para presentar la acción para impugnar la paternidad o la maternidad. Conforme al referido artículo, tal acción caduca al año desde que el impugnador tiene indicios o conoce hechos que crean una duda verdadera sobre la inexactitud de la filiación.

*Íd.* Según expuesto, el término para impugnar la paternidad es uno de caducidad. El Tribunal Supremo ha dispuesto que, la caducidad "es la decadencia de un derecho o su pérdida por haber incumplido en el plazo determinado la formalidad o condición exigida por la ley". *Íd.* pág. 478. Es decir, un término de caducidad extingue la acción por el mero transcurso del tiempo. La caducidad no permite interrupción ni suspensión. *Íd.*; *Muñoz v. Ten General,* 167 DPR 297 (2006). Así las cosas, si la acción de impugnación no es incoada dentro del plazo concedido por ley, se consolida el *status familiae* del hijo o la hija, para todos los efectos legales, por haber caducado el término. Si transcurre el término de seis meses a partir de que el presunto padre advino en conocimiento de la inexactitud filiatoria, el estado filiatorio adviene final y no podrá ejercitarse la acción de impugnación, aunque la realidad biológica y la jurídica no coincidan. *Rivera Marrero v. Santiago Martínez,* supra, págs. 478-479.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla al caso ante nuestra consideración.

**III**

En el caso que nos ocupa, en esencia, nos corresponde determinar si el foro primario incidió al no desestimar la demanda de impugnación de paternidad por haber caducado la causa de acción.

Como cuestión de umbral, destacamos que, ostentamos jurisdicción para entender en la controversia de marras, por tratarse de un asunto de relaciones de familia. Aclarado lo anterior, procedemos a adentrarnos en la aludida controversia.

Tal cual surge del tracto procesal del caso que nos atiene, el 2 de junio de 2023 la señora Epsteins Morales interpuso ante el Tribunal de Primera Instancia una *Demanda* contra el señor Flores

Rupiza y el señor Alonso González, a los fines de impugnar la filiación de la menor KRFE con el señor Flores Rupiza, establecida mediante *Sentencia* emitida por el 24 de enero de 2020. Solicitó, además, que el foro *a quo* estableciera una nueva filiación a la menor KRFE con el señor Alonso González.

En la Demanda de impugnación de paternidad, la parte recurrida alegó, entre otros asuntos, lo siguiente:

[.....]

> 6. Que para abril de 2023 el Sr. Leoncio Alonso González, con quien la demandante había sostenido una relación sentimental le manifiesta que entendía que era el padre biológico de la menor K.R.F.E.

> 7. Que el codemandado el Sr. Leoncio Alonso González y la demandante acceden a realizarse una prueba de ADN mediante un sistema en la farmacia Walgreens y la misma report[ó] un resultado de posibilidad de paternidad de 99.9999999999%.

> 8. Que para despejar las dudas acceden a realizarse una prueba en el Laboratorio Clínico Irizarry Guash la cual report[ó] para el 8 de mayo de 2023 una posibilidad de paternidad de 99.99%.

> [.....]

> 14. Que el interés de la parte demandante que la realidad jurídica de [la] menor coincida con la realidad biológica para que exista la veracidad que debe asistirle.

> 15. Que se solicita al Honorable tribunal previo los trámites correspondientes ordene la realización de nuevas pruebas de ADN o acoja los resultados de las ya realizadas.

> [.....]

Es la contención de la parte recurrida que fue el señor Alonso González quien le manifestó en abril de 2023 su inquietud de que la menor KRFE era su hija, por lo que, le solicitó la realización de las pruebas de ADN de forma extrajudicial. Arguye que, independientemente del término transcurrido, la inexactitud de la filiación se concretó el 8 de mayo de 2023 y que el 2 de junio de 2023, se presentó la acción de impugnación de filiación. Aduce que, la acción se interpuso a solo seis (6) días de tener conocimiento de

la inexactitud de la filiación establecida por reconocimiento voluntario mediante *Sentencia* emitida en el ISRF201900676.

La parte peticionaria, por su parte, nos plantea que, "[r]esulta forzoso colegir que para la parte demandante en el presente caso los "indicios" o "hechos" conocidos por esta que crean una duda verdadera sobre la "inexactitud de la filiación" surgieron desde el momento en el cual sostuvo relaciones consensuales con ambos codemandados durante el periodo en el cual la menor KRFE fue concebida. Acotó que, en el momento en que la demandante advino en conocimiento de que estaba embarazada, instantáneamente nació para ésta la "imprecisión o falta de certeza" sobre quien sería el padre de la menor concebida.

Como sabemos, las controversias jurídicas concernientes al cuestionamiento de una filiación establecida, requieren un balance ponderado entre los intereses apremiantes de política pública que en dicha relación convergen. Debemos considerar tanto el interés en que la filiación jurídica sea reflejo de la realidad biológica como la importancia que reviste a la estabilidad jurídica del estado civil de las personas. *Véase González Rosado v. Echevarría*, supra, págs. 571-572.

En el caso que nos ocupa, no podemos pasar por alto que, la filiación que la recurrida pretende impugnar se dio en virtud de la *Sentencia* dictada en el caso ISRF201900676. Durante el trámite de dicho pleito, la parte recurrida bien pudo solicitarle oportunamente al foro *a quo* que ordenara la realización de la prueba de ADN –tal como lo pretende ahora–; sin embargo, no lo hizo. Por el contrario, guardó silencio sobre la posible inexactitud filiatoria. Consecuentemente, luego de escuchada la prueba desfilada en la vista celebrada el 15 de enero de 2020, el foro primario formuló como un hecho determinado, que el señor Flores Rupiza *reconoció de forma voluntaria* ser el padre biológico de la menor.

En nuestro ordenamiento jurídico, el reconocimiento voluntario se califica como un acto jurídico por medio del cual se admite el hecho de ser padre o madre y, como consecuencia, el reconocido adquiere el estado civil de hijo con todos los efectos legales que ello acarrea.[7] *Ortega Vélez, Compendio de Derecho de Familia, op. cit.*, pág. 408.[8]   En *Mayol v. Torres,* 164 DPR 517, 539 (2005), nuestro Tribunal Supremo resaltó que dicho acto es uno fundamentalmente: "individual; personalísimo; unilateral; formal, expreso y solemne; puro e irrevocable".[9]

Por otro lado, según el derecho expuesto, la acción para impugnar la presunción de paternidad por parte del padre legal deberá ejercitarse **dentro del plazo de caducidad de seis (6) meses, desde la fecha en la que advenga en conocimiento de la inexactitud de la filiación**[10]. (Énfasis nuestro).  Para que la acción de impugnación de paternidad prospere, esta deberá presentarse oportunamente, y deberá estar basada en alegaciones específicas que, siendo tomadas como ciertas demuestren a satisfacción del juzgador que existe una duda real sobre la exactitud de la filiación[11]. El término para impugnar la paternidad es uno de caducidad, esta "es la decadencia de un derecho o su pérdida por haber incumplido en el plazo determinado la formalidad o condición exigida por la ley"[12].  Según es sabido, la caducidad no permite interrupción ni suspensión, es por lo que, esta extingue la acción por el mero transcurso del tiempo[13].  Si la acción de impugnación no es incoada

---

[7] Así, "[a]l destacarse la naturaleza no negocial del reconocimiento, lo que se afirma es el predominio de los efectos legales sobre la voluntad del reconocedor". L. Díez-Picazo y A. Gullón, *op. cit.* pág. 262.

[8] *Véase Álvareztorre Muñiz v. Soriani Jiménez*, 175 DPR 398 (2007) citando a *Sánchez v. Sánchez,* 154 DPR 645, 664 (2001); *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 180; *RPR & BJJ. Ex Parte*, supra, págs. 416-417.

[9] *Véase, Almodóvar v. Méndez*, 125 DPR 218, 236-237 (1990); *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 182.

[10] Art. 117 del Código Civil de 1930, 31 LPRA sec. 465; *RPR & BJJ Ex Parte*, supra, pág. 415; *Rivera Marrero v. Santiago Martínez*, supra, págs. 477-478.

[11] *Íd.*

[12] *Íd.* pág. 478.

[13] *Íd.*; *Muñoz v. Ten General,* 167 DPR 297 (2006).

dentro del plazo concedido por ley, se consolida el *status familiae* del hijo o la hija, para todos los efectos legales, por haber caducado el término. Si transcurre el término de seis meses a partir de que el presunto padre advino en conocimiento de la inexactitud filiatoria, el estado filiatorio adviene final y no podrá ejercitarse la acción de impugnación, aunque la realidad biológica y la jurídica no coincidan[14].

Ante el cuadro fáctico y procesal del caso que nos ocupa, resulta forzoso concluir que la acción de impugnación de paternidad incoada por la parte recurrida caducó. En vista de lo anterior, procede la desestimación de la aludida *Demanda*.

Lo anterior no es óbice para que la menor, una vez alcance la mayoría de edad, inste una acción filiatoria, en búsqueda de su padre biológico, que conlleve la impugnación de su filiación actual.[15]

**IV**

Por los fundamentos que anteceden, se expide el recurso de *certiorari*, se revoca el dictamen recurrido y se desestima la demanda de impugnación de paternidad objeto del presente recurso.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[14] *Rivera Marrero v. Santiago Martínez*, supra, págs. 478-479.
[15] Este derecho está amparado en la Constitución de Puerto Rico, Art. II Sec. 1, Const. ELA, LPRA, Tomo 1, que consagra como inviolable la dignidad del ser humano.