Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (X)[1]

| JOSUÉ NATERA CHIMELIS<br><br>Apelado<br><br>v.<br><br>CARMEN VIRGINIA VARGAS PÉREZ<br><br>Apelante | TA2025AP00145 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala superior de Mayagüez<br><br>Caso núm.: MZ2025RF00137<br><br>Sobre: Custodia, Patria Potestad y Relaciones Paterno Filiales<br><br>Caso núm.: MZ2023RF00715<br>Sobre: Filiación |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 26 de septiembre de 2025.

Comparece ante este tribunal apelativo, la Sra. Carmen Virginia Vargas Pérez (señora Vargas Pérez o apelante) mediante el recurso de apelación de epígrafe y nos solicita la revisión de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI), el 30 de junio de 2025, notificada el 1 de julio siguiente. Mediante este dictamen, el foro primario declaró *Ha Lugar* a la demanda instada por el Sr. Josué Natera Chimelis (señor Natera Chimelis o apelado). Consecuentemente, permitió las relaciones paternofiliales entre este y la menor ASNV. Asimismo, refirió el caso a la Examinadora de Pensiones Alimentarias para el señalamiento de la vista correspondiente.

La apelante acompañó su recurso con una *Moción de Extrema Urgencia: en Auxilio de Jurisdicción*, donde solicitó la paralización de

---

[1] DJ 2024-062C

los procedimientos en el foro primario, y esta fue concedida mediante la *Resolución* del 18 de julio de 2025.

Por los fundamentos que esbozamos a continuación, se confirma el dictamen apelado y se deja sin efecto la paralización de los procedimientos.

## I.

Conforme surge del expediente, la menor ASNV, nacida el 5 de octubre de 2022, es hija biológica de la Sra. Paola Muñiz Vargas (señora Muñiz Vargas) y del señor Natera Chimelis. Al ser inscrita en el Registro Demográfico, la menor no fue reconocida por el apelado. Casi un año después del nacimiento de la menor, el 9 de junio de 2023, la señora Muñiz Vargas falleció en un accidente de tránsito.

Ante tal circunstancia, el 18 de agosto de 2023, la señora Vargas Pérez, abuela materna de la menor, presentó una petición de adopción ante el foro primario en el caso MZ2023RF00517.[2] Tras varios trámites procesales, el 23 de octubre de 2023, reducido a escrito el 1 de noviembre posterior, y notificada al próximo día, el TPI decretó la adopción.[3] Consecuentemente, ordenó que se sustituyera el certificado de nacimiento de la menor por uno nuevo, en el que se incluyera a la señora Vargas Pérez como madre de esta.

Posteriormente, el 23 de noviembre de 2023, el señor Natera Chimelis presentó una *Demanda* sobre filiación contra la sucesión de la señora Muñoz Vargas, compuesta por la señora Vargas Pérez y la menor ASNV, en el caso MZ2023RF00715.[4] En esta, adujo que había mantenido una relación sentimental con la señora Muñiz Vargas por más de trece (13) años. Indicó que, durante dicha relación, la señora Muñiz Vargas había quedado en estado de

---

[2] Véase, el Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI, en el caso MZ2023RF00517, Entrada núm. 1.

[3] Véase, el Anejo 2 del recurso de apelación.

[4] Véase, SUMAC TPI en el caso MZ2023RF00715, Entrada núm. 1.

gestación. Adujo que, posteriormente, nació la menor y compartió con esta en un sinnúmero de ocasiones. Añadió que, la menor siempre lo identificó como su padre. No obstante lo anterior, adujo que luego del fallecimiento de la señora Muñoz Vargas, la apelante le impedía compartir con la menor.

Por lo anterior, el señor Natera Chimelis solicitó que: (1) se realizara una prueba de paternidad para confirmar el lazo consanguíneo de este con la menor ASNV;[5] (2) se determinaran las relaciones filiales con la menor y, (3) que se ordenara al Registro Demográfico a incluirlo como padre de la menor.

Luego de varios trámites procesales, el 31 de julio de 2024, notificado al siguiente día, el foro *a quo* emitió una *Sentencia* declarando *Ha Lugar* a la demanda.[6] Adicionalmente, ordenó al Registro Demográfico a: (1) inscribir como padre de la menor al apelado y, (2) a enmendar el certificado de nacimiento de la menor, a los fines de que apareciera el apellido del señor Natera Chimelis en el renglón de apellido paterno.

Varios meses más tarde, específicamente el 5 de marzo de 2025, el señor Natera Chimelis instó una nueva *Demanda* sobre relaciones paternofiliales contra la señora Vargas Pérez, con el interés de establecer formalmente las relaciones filiales con la menor ASNV.[7] Además de ello, el señor Natera Chimelis solicitó la imposición de una pensión alimentaria a favor de esta.

El 28 de marzo posterior, la señora Vargas Pérez solicitó la desestimación del pleito.[8] En su escrito, la apelante arguyó que la solicitud resultaba injustificable e improcedente. Precisó que la determinación de filiación biológica no restablecía derecho alguno al

---

[5] La prueba de paternidad se realizó el 23 de mayo de 2024, y el resultado fue de 99.9%. El 13 de junio siguiente, el laboratorio donde se administró la misma presentó el resultado ante el foro primario mediante una *Moción Informativa*. Véase, el SUMAC TPI en el caso MZ2023RF00715, Entrada núm. 28.

[6] Véase, el Anejo 1 del recurso de apelación.

[7] Véase, el SUMAC TPI, Entrada núm. 1.

[8] *Íd.*, Entrada núm. 12.

señor Natera Chimelis sobre la menor, ni revivía los lazos jurídicos de esta con su familia biológica. Contrario a ello, sostuvo que esto tuvo el único fin de evitar que, en un futuro, la menor se involucrara con algún pariente o familiar e incurriera en actos constitutivos de delito por desconocimiento.

Tras varias incidencias procesales, innecesarias pormenorizar, el 27 de mayo de 2025, el señor Natera Chimelis presentó su oposición a la moción de desestimación.[9] En lo pertinente, sostuvo que el decreto de adopción no excluía al padre de realizar el acto de reconocimiento de la menor. Indicó que, en el proceso de adopción, no se contempló ni se alegó la privación de patria potestad del padre, aunque en dicho momento era desconocido. Adicionalmente, alegó que el Artículo 587 del Código Civil de Puerto Rico, 31 LPRA sec. 7188, reconocía la posibilidad de llevar a cabo una determinación de filiación luego de un proceso de adopción, lo que resolvía la controversia del caso.

Por otro lado, invocó la defensa de impedimento colateral por sentencia. Manifestó que, a diferencia de él, en el caso de adopción, la señora Vargas Pérez pudo participar activamente en el caso de filiación. Añadió que esta no presentó las defensas, que ahora planteaba.

El 9 de junio de 2025, la señora Vargas Pérez instó una *Réplica a Moción de Oposición a la Desestimación*.[10] En esencia, reiteró que ni la determinación de filiación natural, ni la determinación de que el señor Natera Chimelis era el padre biológico de la menor, otorgaban derechos de patria potestad a este último con respecto a la menor. Además, **por vez primera**, planteó que la Sentencia dictada en el caso de filiación MZ2023RF00715 era parcialmente nula por haberse ordenado al Registro Demográfico

---

[9] Véase, el SUMAC TPI, Entrada núm.16.
[10] *Íd.*, Entrada núm. 20.

inscribir a la menor con el apellido de su padre biológico por ser improcedente en derecho. Esto, debido a que la menor había roto los vínculos biológicos con la adopción, según argumentó.

Atendidos los escritos de las partes, el 17 de junio de 2025, notificada al próximo día, el foro recurrido declaró *No Ha Lugar* a la a solicitud de desestimación presentada por la señora Vargas Pérez.[11]

Así las cosas, el juicio en su fondo continuó el 23 de junio de 2025.[12] Conforme surge de la Minuta,[13] allí el tribunal escuchó y evaluó el testimonio de las partes de epígrafe; así como la postura de la Sra. Betzaida Irizarry Pagán, Trabajadora Social de la Unidad de Relaciones de Familia del Centro Judicial de Mayagüez, quien entrevistó a ambas partes previamente.

A base de dichos testimonios, el 30 de julio de 2025, notificada al día siguiente, el TPI emitió la *Sentencia* apelada, declarando *Con Lugar* la demanda.[14] Consecuentemente, el foro *a quo* permitió las relaciones paternofiliales entre el señor Natera Chimelis y la menor ASNV, conforme a las recomendaciones que habría de realizar la trabajadora social asignada al caso.

Inconforme, el 12 de julio de 2025, la señora Vargas Pérez instó una *Moción Solicitando Reconsideración de Sentencia.*[15] A grandes rasgos insistió en que la ley disponía claramente que, tras un decreto de adopción, los vínculos legales con la familia biológica quedaban extintos. Asimismo, subrayó que cualquier determinación posterior de filiación natural no afecta la adopción ya establecida, ni revive los lazos con la familia biológica; de modo que, el

---

[11] *Íd.*, Entrada núm. 25.
[12] El juicio en su fondo dio comienzo el 6 de mayo de 2025. Véase, el SUMAC TPI, Entrada núm. 15.
[13] La vista fue transcrita y notificada el 25 de junio de 2025. Véase, el SUMAC TPI, Entrada núm. 27.
[14] Véase, el Anejo 1 del recurso de apelación.
[15] Véase, SUMAC TPI, Entrada núm. 33.

ordenamiento jurídico no permitía que un padre biológico estableciera relaciones paterno filiales con un menor ya adoptado.

El 15 de julio posterior, el tribunal primario declaró *No Ha Lugar* a la solicitud de reconsideración[16]

Insatisfecha aún, el 18 de julio de 2025, la señora Vargas Pérez acudió ante este foro apelativo imputándole al TPI haber incurrido en los siguientes errores:

> PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA DE MAYAGÜEZ EN EL CASO [MZ2023RF00715] SOBRE FILIACIÓN, AL ATRIBUIRSE FACULTAD JURÍDICA PARA ORDENAR AL REGISTRO DEMOGRÁFICO INSCRIBIR A LA MENOR CON EL APELLIDO DE SU PADRE BIOLÓGICO, POSTERIOR AL DECRETO DE ADOPCIÓN, DONDE LA MENOR FUE ADOPTADA POR CARMEN VIRGINIA VARGAS PÉREZ.

> SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA DE MAYAGÜEZ EN EL CASO [MZ2023RF00715] SOBRE FILIACIÓN, AL NO CONSIDERAR EL DERECHO APLICABLE SOBRE LA IMPROCEDENCIA DE ORDENAR SE INCLUYERA EL APELLIDO DEL PADRE BIOLÓGICO EN EL CERTIFICADO DE NACIMIENTO DE LA MENOR CUANDO YA LA MENOR HABÍA ROTO LOS VÍNCULOS CON SUS PROGENITORES BIOLÓGICOS POR HABER SIDO ADOPTADA.

> TERCER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA DE MAYAGÜEZ EN EL CASO [MZ2023RF00715] SOBRE FILIACIÓN AL NO ACLARAR AL REGISTRO DEMOGRÁFICO QUE LO QUE PROCEDÍA ERA ANOTAR Y CONSERVAR CONFIDENCIALMENTE LA INFORMACIÓN SOBRE EL PADRE BIOLÓGICO, Y NO INCLUIR EL APELLIDO DEL PADRE EN EL CERTIFICADO DE NACIMIENTO DE LA NUEVA INSCRIPCIÓN DE ADOPCIÓN, QUE CONTIENE YA LA INFORMACIÓN CON NOMBRE Y APELLIDOS DE LA ADOPTANTE, CUYA FILIACIÓN ES PRODUCTO DE UNA ADOPCIÓN LEGAL Y PERFECCIONADA QUE ROMPIÓ TODO VÍNCULO NATURAL Y BIOLÓGICO, CONFORME A LA LEY APLICABLE.

> CUARTO SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA DE MAYAGÜEZ EN EL CASO MZ2025RF00137, AL CONCEDER RELACIONES PATERNO FILIALES Y PATRIA POTESTAD AL SR. JOSUÉ NATERA CHIMELIS CUANDO LA MENOR PREVIAMENTE FUE ADOPTADA, CUYA FILIACIÓN ES PRODUCTO DE UNA ADOPCIÓN LEGAL Y PERFECCIONADA QUE ROMPIÓ TODO VÍNCULO NATURAL Y BIOLÓGICO.

---

[16] *Íd.*, Entrada núm. 34.

La apelante incluyó en el recurso una moción solicitando auxilio de jurisdicción para paralizar los procedimientos ante el foro primario. El mismo 18 de julio de 2025, emitimos una *Resolución* declarándola *Ha Lugar*. Asimismo, concedimos al apelado el término de treinta (30) días para expresarse.

En cumplimiento, y luego de concedida una prórroga de treinta (30) días adicionales, el 17 de septiembre de 2025, el señor Natera Chimelis presentó su *Alegato de la Parte Apelada*. Así, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso de epígrafe.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Regla 49.2 de las de Procedimiento Civil**

La Regla 49.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, establece el mecanismo procesal que se tiene disponible para solicitar al foro de instancia el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí dispuestos. *García Colón et al. v. Sucn. González*, 178 DPR 527, 539 (2010); *De Jesús Viñas v. González Lugo*, 170 DPR 499, 513 (2007); *Náter v. Ramos*, 162 DPR 616, 624 (2004). La misma provee un mecanismo post sentencia para impedir que se vean frustrados los fines de la justicia mediante tecnicismos y sofisticaciones. *García Colón et al. v. Sucn. González*, supra; *Ortiz Serrano v. Ortiz Díaz*, 106 DPR 445, 449 (1977). El peticionario del relevo está obligado a justificar su solicitud amparándose en una de las causales establecidas en la Regla 49.2, *supra. García Colón et al. v. Sucn. González*, supra; *Reyes v. E.L.A. et al.*, 155 DPR 799, 809 (2001). De esa manera, se permite al tribunal cumplir con su deber de hacer un análisis de todo el expediente del caso para determinar si se da una de las

causales dispuestas en la Regla 49. *Dávila v. Hosp. San Miguel, Inc.*, 117 DPR 807, 817 (1986). La Regla 49.2, *supra*, dispone, que:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
>
> (d) nulidad de la sentencia;
>
> (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
>
> (f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Aunque la Regla 49.2, *supra*, debe interpretarse de forma liberal, esto no significa que se le debe dar atención desmedida a uno de los dos intereses a balancear. *Piazza Vélez v. Isla del Río, Inc.*, 158 DPR 440, 448 (2003); *Dávila v. Hosp. San Miguel, Inc.*, supra, a la pág. 818. Es norma hartamente reiterada que la Regla 49.2, *supra*, "**no es una llave maestra para reabrir a capricho el pleito ya adjudicado**". (Énfasis Nuestro). *Ríos v. Tribunal Superior*, 102 DPR 793, 794 (1974).

El mecanismo de relevo de sentencia no puede ser utilizado en sustitución de los recursos de revisión o reconsideración y tampoco existe para proveer un remedio adicional contra una sentencia erróneamente dictada. *Náter v. Ramos*, supra, a la pág. 625; *Olmedo Nazario v. Sueiro Jiménez*, 123 DPR 294, 299 (1989). Una parte no tiene derecho a que su caso adquiera vida eterna en los tribunales, manteniendo a la otra parte en un estado de

incertidumbre, pues, la Regla 49.2 *supra,* no se puede utilizar para premiar conducta en perjuicio de los intereses de la otra parte y la buena administración de la justicia. *Dávila v. Hosp. San Miguel, Inc.,* supra, a las págs. 816 y 819.

En otras palabras, las determinaciones judiciales que son finales y firmes no pueden estar sujetas a ser alteradas por tiempo indefinido. *Piazza Vélez v. Isla del Río, Inc.,* supra, a la pág. 449. Asimismo, la reapertura de un caso sin muestra de justa causa constituye un abuso de discreción. *Fine Art Wallpaper v. Wolff,* 102 DPR 451, 458 (1974).

Con relación al término, la Regla 49.2, *supra,* dispone que "[l]a moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento." (Énfasis nuestro). El Tribunal Supremo ha resuelto, y la Regla 49.2 es categórica en cuanto a esto, que el término de seis (6) meses para la presentación de la moción de relevo de sentencia es fatal. *Piazza Vélez v. Isla del Río, Inc.,* supra, a la pág. 448; *Sánchez Ramos v. Troche Toro,* 111 DPR 155, 157 (1981); *Municipio de Coamo v. Tribunal Superior,* 99 DPR 932, 937 (1971); *Srio. del Trabajo v. Tribunal Superior,* 91 DPR 864, 867 (1965). La fatalidad del término de seis (6) meses para las mociones de reapertura es la clara norma procesal vigente. *Piazza Vélez v. Isla del Río, Inc.,* supra, a la pág. 450, citando a R. Hernández Colón, *Derecho Procesal Civil,* San Juan, Ed. Michie, 1997, págs. 309–310. No obstante, dicho plazo es inaplicable cuando se trata de una sentencia nula. *Náter v. Ramos,* supra; *Montañez v. Policía de Puerto Rico,* 150 DPR 917, 921–922 (2000). En estos casos, la parte promovedora de la moción de relevo de sentencia no estará limitada por el término de seis (6) meses dispuestos en la Regla 49.2, *supra. HRS Erase, Inc. v. Centro Médico del Turabo, Inc.,* 205 DPR 689, 699 (2020).

**Filiación: Conceptos Generales**

La filiación se define como "'el estado civil de la persona, determinado por la situación que, dentro de una familia, le asigna el haber sido engendrada en ella o el estar en ella en virtud de la adopción o de otro hecho legalmente suficiente al efecto." *Beníquez et al. v. Vargas et al.*, 184 DPR 210, 226 (2012) que cita a *Castro Torres v. Negrón Soto*, 159 DPR 568, 579-580 (2003). Se ha catalogado a la figura de la filiación como una relación jurídica fundamental que depende de una serie de criterios para establecerse. *Castro Torres v. Negrón Soto*, 159 DPR 568, 580 (2003). Entre esos, los criterios básicos son los biológicos, pero estos no siempre entran en acción. *Íd.* Por ello, en nuestro sistema de derecho, el vínculo biológico es insuficiente para que nazca el vínculo jurídico, pues es posible que estos sean incongruentes. *Vázquez Vélez v. Caro Moreno*, 182 DPR 803, 810 (2011); *Castro Torres v. Negrón Soto,* supra*,* en la pág. 580.

**Filiación Natural y Filiación Adoptiva**

Nuestro estado de derecho reconoce dos tipos de filiación: la natural y la adoptiva.

La filiación natural supone la existencia de un vínculo biológico. *Beníquez et al. v. Vargas et al.,* supra, a las págs. 228-229. Esta, a su vez, se divide en dos modalidades: la matrimonial y la extramatrimonial. *Íd.*, a la pág. 229. La filiación natural matrimonial surge por la generación o concepción dentro del matrimonio. Esta vertiente nace de una presunción controvertible, recogida en el Artículo 586 del Código Civil de Puerto Rico, 31 LPRA sec. 7122. *Íd.* Cuando no existe un vínculo matrimonial, opera entonces la filiación extramatrimonial. *Íd.*, a la pág. 230. Esta modalidad no goza de una presunción de paternidad, sino que depende del reconocimiento voluntario realizado por el padre biológico –que se caracteriza por ser un acto individual, personalísimo, unilateral, formal, puro e

irrevocable– o del decreto judicial que resulte en una acción de reconocimiento forzoso instada por alguien con legitimación activa para ello. *Íd.*

Por otro lado, la filiación adoptiva es definida como el acto jurídico solemne que implica la ruptura total del vínculo jurídico-familiar de una persona con sus parientes biológicos o adoptivos anteriores, y la consecuente filiación de este con aquel o aquellos que han expresado la voluntad de que sea su hijo legalmente. *Beníquez v. Vargas*, supra, a la pág. 233, citando a *López v. E.L.A.*, 165 DPR 280, 299 (2005); *Zapata et al. v. Zapata et al.*, 156 DPR 278, 286 (2002). A través de la filiación adoptiva, se prescinde del fundamento biológico, permitiendo que el acto jurídico sustituya el hecho natural, mas, manteniendo los mismos deberes y obligaciones jurídicas y sociales existentes en la filiación natural. *Beníquez v. Vargas*, supra; *López Rivera v. E.L.A.*, supra; *Zapata et al. v. Zapata et al.*, supra.

Como norma general, en nuestro ordenamiento jurídico resulta imposible tener más de dos filiaciones naturales. Sin embargo, ello no aplica a la filiación adoptiva, pues esta y la natural no son contradictorias. **La existencia de una filiación natural no impide que posteriormente se determine una filiación adoptiva, ni viceversa**. **Pues, de igual forma, que exista una filiación adoptiva no impide la determinación posterior de una filiación natural, sin destruir la primera**. *Beníquez v. Vargas*, supra, a las págs. 249-250, citando a E. Toral Lara, *Novedades en materia de determinación y prueba de filiación*, en E. Llamas Pombo, *Nuevos conflictos del derecho de familia*, Madrid, Ed. La Ley, 2009, pág. 323. Así, el Artículo 587 del Código Civil de Puerto Rico, 31 LPRA sec. 7188, reconoce que "[l]a determinación de filiación del adoptado que ocurra en fecha posterior al decreto de adopción, no afectará la adopción ya vigente, ni al adoptado y su familia adoptante."

Ahora bien, la determinación posterior de filiación natural, como regla general, persigue impedir que la persona adoptada contraiga matrimonio con un pariente de su anterior familia biológica, según detalla el Artículo 588 del Código Civil de Puerto Rico, 31 LPRA sec. 7189. De modo que, una filiación natural posterior no elimina los vínculos jurídicos que la persona adoptada tiene con su nueva familia adoptiva. *Beníquez v. Vargas*, supra, a la pág. 251.

Por último, nuestro más alto foro ha reiterado a manera de excepción que no toda filiación adoptiva supone, de manera automática, la ruptura total con el vínculo biológico o anterior. *Ex Parte J.A.A*, 104 DPR 551, 554-555 (1976); *M.J.C.A., menor v. J.L.E.M., menor,* 124 DPR 910, 933 (1989). Sino que corresponde a los tribunales determinar si existe dicha ruptura con los vínculos anteriores y, a su vez, si opera respecto a ambas líneas, paterna y materna, o de una sola. *Ex Parte J.A.A,* supra.

**Estándar de Revisión Apelativa**

Es norma trillada que, en ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el Tribunal de Primera Instancia. *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). Esta norma de deferencia judicial descansa en que el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran; factores que van formando gradualmente en su conciencia la convicción sobre la verdad de lo declarado. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 68 (2009).

De otra parte, cuando se evalúa la prueba documental, el foro apelativo se encuentra en las mismas condiciones que el foro de primera instancia. Al tener ante sí los mismos documentos que fueron considerados por el juzgador de instancia, no hay emociones o comportamientos que el juzgador apelativo esté dejando fuera de la ecuación. "Somos conscientes, naturalmente, que en relación con la evaluación de prueba documental este tribunal está en idéntica situación que los tribunales de instancia". *Trinidad v. Chade*, 153 DPR 280, 292 (2001), citando a *Díaz García v. Aponte Aponte*, 125 DPR 1 (1989), y a *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 DPR 161 (1989).

### III.

En sus **primeros tres señalamientos de error**, la señora Vargas Sánchez impugna la Sentencia dictada por el TPI en el caso número MZ2023RF00715 sobre filiación.

Sobre estos planteamientos, debemos apuntalar que estamos impedidos de justipreciarlos según explicaremos.

Primeramente, la referida Sentencia se dictó el el 31 de julio de 2024, y se notificó el 1 de agosto, por lo que desde esta última fecha comenzó el término de seis (6) meses para presentar la solicitud, al amparo de la Regla 49.2 de las de Procedimiento Civil, *supra*. El que como vemos transcurrió sin que se hubiese instado oportunamente el reclamo. Como bien expusimos, el Tribunal Supremo ha resuelto, y la Regla 49.2 preceptúa de forma categórica, que el término de seis (6) meses para la presentación de la moción de relevo de sentencia es fatal. Por tanto, transcurrido el plazo para ello resulta improcedente la acción de nulidad de sentencia.

Resaltamos, además, que la pretensión de declarar nula dicha determinación se expuso, **por vez primera**, en la *Réplica a Moción de Oposición a la Desestimación* instada por la apelante ante el TPI en este caso. Es decir, transcurrido el término de seis (6) antes

explicado, no se incoó un pleito independiente formal sobre nulidad de sentencia como requiere la norma en cuestión.

Por su parte, la señora Vargas Sánchez arguye que la antedicha Sentencia es nula por haberse dictaminado una orden errónea en derecho. Al respecto en el recurso expresó "... [S]e establece que no se está impugnando la determinación de filiación natural, ni se cuestiona la legitimación que tuvo el peticionario en el momento de su solicitud filiación, ni mucho menos se ataca la corrección del Honorable Tribunal en el proceso de determinación de filiación natural a favor del peticionario. No obstante, la recurrente invoca que la Sentencia de Filiación es ***nula ab initio***, debido a que el foro primario que atendió este pleito no tenía la facultad de ordenar al Registro Demográfico a inscribir a la menor con el apellido de su padre biológico. Es una actuación improcedente en derecho, debido a que la menor había roto los vínculos con sus progenitores biológicos por haber sido adoptada. Así las cosas, razonó que esa orden fue una actuación *Ultra Vires* y por tanto nula."[17]

Resaltamos que el mecanismo de relevo de sentencia no puede ser utilizado en sustitución de los recursos de revisión o reconsideración y tampoco existe para proveer un remedio adicional contra una sentencia erróneamente dictada. *Náter v. Ramos*, supra; *Olmedo Nazario v. Sueiro Jiménez*, supra. Como bien explica el tratadista Cuevas Segarra "Una sentencia no es nula simplemente porque es o puede ser errónea. La regla [Regla49.2-(4) Nulidad de sentencia y el pleito independiente] aplica sólo en aquellas instancias en que existe un error jurisdiccional o una violación al debido proceso de ley que privó a una parte de la notificación o de la oportunidad de ser oída. Esta regla no provee a las partes licencia

---

[17] Véase, el *Escrito de Apelación*, a las págs. 19-20. Énfasis y subrayado en el original.

para dormirse sobre sus derechos." A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Pubs. JTS, 2011, T. IV, pág. 1415; *López García v. López García*, 200 DPR 50, 61 (2018).

Por último, es importante mencionar que, pese a lo anterior, y aún si pudiéramos entrar a considerar la controversia, estamos impedimos de ejercer nuestra función revisora, ya que el TPI nunca resolvió la solicitud de anular la Sentencia emitida en el caso de filiación. Esto, según peticionado por la señora Vargas Sánchez en la *Réplica a Moción de Oposición a la Desestimación*. Por tanto, no existe un dictamen revisable ante esta *Curia* emitido por el foro primario referente a este asunto.

Por otro lado, en su **cuarto señalamiento de error**, la apelante aduce que el foro apelado incidió al conceder las relaciones paternofiliales entre el señor Natera Chimelis y la menor ASNV. Insiste en que la filiación adoptiva rompió todo vínculo natural y biológico entre estos.

En su alegato en oposición, el apelado arguyó que un análisis jurisprudencial de los pasados cincuenta (50) años, le conduce a concluir que nuestro ordenamiento jurídico "tiende a la inclusión, a flexibilizar sus parámetros siempre y cuando sea para beneficio del adoptado y poder equipararle a la máxima de que pueda vivir y desarrollarse en el mismo rango de un hijo biológico ..." y, que cualquier duda debe ser siempre interpretada en favor del menor y bajo el máxima del bienestar de este.[18]

Añadió, que en el caso de autos solo ha habido una desvinculación biológica, la de la madre, por lo que reconoció la validez de la adopción e insistió en que no es interés del apelado alterar, ni modificarla, ni intervenir en dicha adopción en absoluto. Por lo que, no encontraba impedimento en que la menor sostenga la

---

[18] Véase Alegato de la Parte Apelada, SUMAC TA, Entrada núm. 6, a las págs. 11-12.

filiación adoptiva, sin desvincular la filiación natural y, en consecuencia, el desarrollo y continuación de las relaciones paternofiliales.

De entrada, es menester destacar que la filiación adoptiva, como regla general, según surge del Artículo 587 del Código Civil de Puerto Rico del 2020, 31 LPRA sec. 7188, **extinguirá todo vínculo jurídico entre el adoptado y su familia biológica o adoptiva anterior.** En este sentido, se hace referencia a que la familia adoptiva opera como sustituto en completo y pleno derecho de la familia anterior, natural o jurídica. Así, cuando un menor es adoptado por otra familia, se extingue jurídicamente toda responsabilidad, derechos y obligaciones entre el adoptado y sus progenitores biológicos o adoptivos anterior. Sin embargo, precisa señalar que, por la vía estatutaria y la jurisprudencial, se han reconocido varias excepciones a esta norma. Véase Artículos 587 y 588 del Código Civil 2020, 31 LPRA secs. 7188-7189; *Ex Parte J.A.A.,* supra.[19]

Sobre este particular, para entender mejor las excepciones, hay que destacar -por igual- la diferencia entre los actos de filiación, natural o adoptiva, de vínculo sencillo y los de vínculo doble. La filiación natural supone la existencia de un vínculo biológico. *Beníquez et al. v. Vargas et al.*, supra, a las págs. 228-229. Como mencionamos, la filiación adoptiva es el acto jurídico solemne mediante el cual se prescinde del fundamento biológico, permitiendo que el acto jurídico sustituya el hecho natural, mas, manteniendo los mismos deberes y obligaciones jurídicas y sociales existentes en la filiación natural. *Beníquez v. Vargas*, supra; *López Rivera v. E.L.A.*, supra; *Zapata et al. v. Zapata et al.*, supra. La filiación de vínculo

---

[19] Véase, además, *Instituciones familiares comentado: Código Civil de Puerto Rico: Libro II: Ley núm. 55 de 1 de junio de 2020, según enmendada*, (J. Díaz Rivera, ed.), [Bayamón], Ed. LexJuris de Puerto Rico, 2022, págs. 265-266. En donde establece que, bajo el nuevo código civil, se mantiene la excepción establecida en *J.A.A Ex Parte,* supra.

sencillo es el reconocimiento jurídico de una única persona sobre la paternidad o maternidad suya con relación al menor, es decir, cuando el menor tiene un (1) solo padre o madre registral, ya sea natural o adoptivo.

Por otro lado, en la filiación de vínculo doble se trata del reconocimiento jurídico de dos (2) personas, como padres o madres, con relación al menor como descendiente de estos, por vínculo jurídico. Esta se refiere, entonces, a cuando dos (2) personas reconocen legalmente al menor como su hijo en pleno derecho. Véase *Carillo Vázquez, Ex Parte*, 181 DPR 891, 904-908 (2011).

En cuanto a la filiación de doble vínculo, no es necesario el reconocimiento de ambos progenitores simultáneamente. En ese sentido, nuestro ordenamiento permite el establecimiento de filiaciones en diferentes tiempos, sin afectar el vínculo anterior. Entre estos, se encuentran el reconocimiento voluntario y reconocimiento forzoso, como actos de filiación natural. También se encuentran ejemplos de filiación adoptiva como el de la adopción por cónyuge o pareja en relación análoga a la matrimonial de aquella persona que ha reconocido al hijo o hija registralmente y, por último, cuando el hijo o hija proviene de una única filiación y es adoptado por persona distinta a la que le reconoció.

El reconocimiento voluntario no es otra cosa que la declaración realizada por los padres, en conjunto o por uno de ellos de manera aislada, mediante el cual acreditan que una persona es hijo o hija de ellos. *RPR & BJJ Ex Parte*, 207 DPR 389, 417 (2021). El reconocimiento voluntario no requiere que ambos padres le reconozcan a la vez. Por ejemplo, si al momento de la inscripción registral, le reconociera uno solo de los padres, el Registro Demográfico viene obligado a inscribir al menor con esa única filiación y con los dos apellidos de aquel que les reconoce. Ahora bien, si posterior a esa inscripción ocurre la intención de otro

reconocimiento voluntario, el Registro viene obligado a incluir al progenitor restante y sustituir el apellido de la madre o del padre, según sea el caso. *Íd.*, a las págs. 417-418. El reconocimiento voluntario, crea una presunción de paternidad.

De otro lado, el reconocimiento forzoso es aquel que surge como consecuencia de una sentencia judicial emitida mediante la solicitud de una acción de filiación. *Íd.,* a la pág. 417. En estos casos, la acción judicial es requerida ante la negativa de una de las partes a que el menor sea reconocido como hijo por razón natural. El promovente de esta acción puede ser cualquiera de las partes con legitimación activa, es decir, el progenitor registral, el progenitor biológico no registral o, incluso, el hijo o hija sin reconocer. Artículo 586 del Código Civil de Puerto Rico, *supra.*

En cuanto a los actos de filiación en tiempos distintos, sin menoscabo al vínculo jurídico anterior, natural o registral, cabe destacar primero, cuando el adoptante es cónyuge del progenitor que le ha reconocido. En este escenario, también se permite la filiación del cónyuge del padre o madre registral, incluso, posterior a la muerte de este último. Artículo 588 del Código Civil de Puerto Rico, *supra.* Otro ejemplo, es cuando el menor viene de una única filiación y es adoptado por persona diferente al progenitor que le ha reconocido. *Íd.* En estos casos, le corresponde al tribunal evaluar sobre si la ruptura opera respecto a ambas líneas o a una sola. Véase *Ex Parte J.A.A.*, supra, a la pág. 558. Debemos tener presente que mediante la filiación debe crearse una situación que en lo posible se iguale a la condición natural del ser humano. *Íd.*

Precisa recalcar que, los casos de menores están revestidos por el mayor interés público en pro de su mejor bienestar. De manera que, en los casos relacionados a menores, lo único que se puede afirmar categóricamente es que las decisiones judiciales deben tener como norte lo que mejor le convenga al menor

enmarcado en las leyes vigentes. Con esto en mente, apuntalamos que aun cuando nuestro ordenamiento jurídico no ha interpretado la situación exacta que atendemos, procedemos a utilizar los mismos principios hermenéuticos esbozados jurisprudencialmente y resolver de manera análoga.

En *Ex Parte J.A.A.,* supra, el Tribunal Supremo resolvió una controversia en la que determinó que **la filiación adoptiva no causaba la ruptura total y automática con su familia anterior**, el vínculo biológico de su único padre registral. En aquella situación, la menor no contaba con el reconocimiento de su madre biológica, sino que provenía de una única filiación, la de su padre. La menor reconocía como su madre a la mujer que había vivido en concubinato con su padre, y viceversa, pues, esta última le reconocía como su hija. Tras la separación de su padre y la adoptante, la madre *de facto* de la menor, y ex concubina del padre registral, se propuso adoptarla manteniendo la validez del vínculo jurídico con el padre biológico y registral, pretendiendo que ambos conservaran la relación de padre e hija que sostenían. La Procuradora de la Familia se opuso argumentando que la adopción suponía la ruptura automática y total de los vínculos con la familia anterior. El más alto foro determinó, a favor de la menor y sus padres, **que la adopción no significaba la ruptura automática de los vínculos anteriores. Ello, dependerá de las situaciones particulares de cada caso**. Creando así, una de las primeras excepciones jurisprudenciales sobre la norma general.

Reiteramos que, en *Ex Parte J.A.A.,* supra, la menor provenía de una única filiación (paterna) y vivía con su madre adoptiva sin afectar la relación y el vínculo de esta con su padre. De manera que, no es contradictorio sostener el vínculo natural anterior tras la adopción por su madre *de facto* en sustitución, únicamente, del vínculo -inexistente y vacante- de su madre biológica.

Asimismo, en *M.J.C.A., menor v. J.L.E.M*, supra, el Tribunal Supremo tuvo ante sí la controversia de una abuela y un hermano materno de un menor, cuya madre había fallecido y fue adoptado por sus abuelos paternos, para mantener las relaciones filiales a pesar de la adopción. Citando a *Ex parte J.A.A,* supra, en lo relacionado al caso de autos, la más alta *Curia* resolvió que, **cuando el menor proviene de una única filiación y el adoptante no sea cónyuge del padre o madre del niño, corresponde al juzgador determinar si la ruptura del parentesco biológico opera respecto de ambas líneas o de una sola.** *M.J.C.A., menor v. J.L.E.M*, supra, a la pág. 933. (Énfasis nuestro). En este caso, el tribunal razonó que no sería contradictorio sostener una adopción de los abuelos paternos sin desvincularle con la familia materna y las relaciones filiales con abuela y hermano. Ello, tras razonar que la abuela y hermano materno habían demostrado un gran interés en el bienestar del menor. Así, **estableció que no existe impedimento en ley que prohíba que un adoptado, al adquirir padres adoptivos, continúe vinculado en su parentesco natural con su madre biológica (fallecida) y viceversa.[20]**

De igual forma, en *Carillo Vázquez, Ex Parte,* supra, la controversia versó sobre un proceso de filiación adoptiva, en donde los abuelos maternos pretendían adoptar al menor, sin menoscabo de las relaciones filiales con su madre biológica. La madre biológica del menor, hija de los interesados en ser padres adoptivos, consintió la adopción. Arguyó que, el menor vivía con sus abuelos maternos desde que nació, e interesaba continuar viviendo con estos. El

---

[20] En *M.J.C.A., menor v. J.L.E.M* finalmente el Tribunal Supremo revocó el decreto de adopción por considerarse nulo tras incurrir en la jurisdicción del foro de instancia debido a la violación de los requisitos procesales y sustantivos de la adopción al: (1) los abuelos paternos haber sido tutores del menor e iniciar y finalizar el proceso de adopción sin rendir los informes tutelares requeridos en ley; (2) por no haberse nombrado un defensor judicial o tutor especial e imparcial para velar por el mejor interés del menor y, (3) tras no haber notificado a la abuela materna, cuyo derecho a ser oída como parte interventora fue violentado.

menor reconocía a su abuelo como "papi" y a su madre biológica como "mami". El menor había vivido con su madre biológica en la casa de los abuelos maternos hasta la edad de cinco (5) años, cuando su madre se fue a vivir con su pareja y este se quedó a vivir con sus abuelos. El propósito de la adopción era que los abuelos maternos pudieran tener la custodia y todos los derechos y responsabilidades sobre el menor, pero sin afectar las relaciones maternofiliales.

En este caso, el Tribunal Supremo se dividió en votos iguales, por lo que se confirmó la Sentencia de un Panel hermano de este Tribunal de Apelaciones. En esta, se negó la adopción de los abuelos maternos. Sin embargo, en su opinión concurrente, la Jueza Asociada, Mildred Pabón Charneco, expresó estar conforme con la decisión del foro apelativo, pues, lo que sugerían era que la madre del menor continuara siéndolo *de facto*, mientras, se convertiría en la hermana legal del menor. Lo que generaría una contradicción que pudiera afectar al menor. Añadió que, según surge de las particularidades de ese caso, el menor no sufre de abandono, maltrato o ha sido despreciado por su madre biológica. Por el contrario, se reveló que la madre sí se preocupa por el menor y que quiere lo mejor para él. Ello fue así ya que, en esa situación, distinto a *Ex Parte J.A.A.*, supra, el decreto de adopción no consagraba ante la ley la situación que el menor había conocido durante toda su vida. Si bien reconocía a su abuelo como su papá, también era cierto que reconocía como su mamá a su progenitora.

En el caso de *Beníquez v. Vargas*, supra, nuestro más alto foro resolvió que procedía la acción de reconocimiento forzoso de filiación natural posterior a la filiación adoptiva. Según razonó el Tribunal Supremo, el efecto jurídico de esta determinación, no afectó los vínculos jurídicos existentes entre sí y su familia adoptiva, ni revivió la relación jurídica con su familia de sangre. Sino que la filiación

natural subsistiría a los efectos de impedir que el recurrido se casara con algún pariente de su familia biológica. A diferencia del caso ante nuestra consideración, en *Beníquez v. Vargas*, supra, **el adoptado contaba con dos vínculos jurídicos por filiación adoptiva** -que impedía el reconocimiento de un vínculo adicional, natural o adoptivo- **y no se había relacionado con su padre biológico, a quien conoció en la adultez.**

Como corolario de lo anterior, el Artículo 588 del Código Civil de Puerto Rico, *supra*, establece una excepción a la regla general de la ruptura de todo vínculo anterior al decreto de adopción. Esta es, cuando un menor viene de una única filiación y es adoptado por una persona diferente a su progenitor registral o biológico-jurídico. *Íd.* En cuyo caso, corresponde al juzgador determinar si existe la ruptura con su familia biológica o adoptiva anterior, o si opera contra ambas estirpes o respecto a una sola. *Ex Parte J.A.A*, supra, a las págs. 554-555 *M.J.C.A., menor v. J.L.E.M*, supra, A la pág. 933.

En el caso de epígrafe, contrario a lo que aducen las partes, no se concretó la ruptura con los vínculos biológicos ni por la línea materna ni la paterna. En primer lugar, porque el tribunal no puede ignorar que es abuela materna quién adoptó a la menor, por lo que el vínculo con la estirpe de la familia materna se sostiene, aunque con abuela en sustitución de mamá biológica. En segundo lugar, sobre el vínculo jurídico por la línea paterna, por determinación judicial que advino final y firme, se estableció que no procedió la ruptura con éste, esto tras declarada la filiación y, luego, el establecimiento de las relaciones paternofiliales. Ello es así, toda vez que papá ha demostrado gran interés en el bienestar de la menor e, incluso, contribuir con alimentos y relacionándose con su hija. Cuya filiación y reconocimiento registral, **aunque posterior al de adopción**, supuso la sustitución del vínculo por línea paterna que

se mantuvo libre, ya que la menor proviene de una única filiación registral.

En este punto, no obviemos que el Artículo 587 del Código Civil de Puerto Rico, supra, reconoce que "[l]a determinación de filiación del adoptado que ocurra en fecha posterior al decreto de adopción, no afectará la adopción ya vigente, ni al adoptado y su familia adoptante."

Por tanto, este foro apelativo no encuentra ningún impedimento en que, bajo nuestro ordenamiento jurídico, se concedan las relaciones paternofiliales con el papá biológico y, ahora registral, por sentencia final y firme, luego de la adopción realizada por la abuela materna de la menor ASNV. Al respecto, recordemos que se trata de una menor con una única filiación de vínculo sencillo, tras la muerte de su madre biológica, más existe una determinación de un acto de filiación *a posteriori* para ocupar un segundo vínculo desierto. Ello, sin menoscabo al vínculo jurídico nacido de la adopción por la madre adoptiva, antes abuela materna.

Adicionalmente, no podemos soslayar que la menor se ha relacionado y se relaciona con su padre al que reconoce como tal y, quien ha mostrado disponibilidad e interés en contribuir en la crianza de la menor y contribuir con alimentos. Fortaleciendo así, la estabilidad emocional y económica que rodea a la menor.

Nótese, además, que como ha establecido el más alto foro judicial de manera análoga, esto no significa que siempre que exista una filiación de vínculo sencillo cualquier persona con interés, por razón natural o intención jurídica (adoptiva), está llamada a ocupar una segunda filiación ni el tribunal obligado a decretarlo. Apuntalamos, igualmente, que no existe en nuestro ordenamiento jurídico privilegio o preferencia por otorgarle mayor peso al vínculo biológico sobre el adoptivo. Más bien, corresponde al juzgador analizar cada caso de manera individual con las particularidades de

cada controversia ante sí y proceder garantizando el mejor interés del menor. Teniendo en cuenta, a su vez, que el menor se desarrolle dentro de la condición más natural posible, en el seno de una familia con doble vínculo, paterna y materna en este caso.

En fin, acorde con el derecho previamente expuesto y el análisis minucioso realizado, nos es forzoso concluir que el TPI no incurrió en el cuarto error señalado, al establecer las relaciones paternofiliales y la imposición de alimentos a favor de la menor.

## IV.

Por los fundamentos expuestos, confirmamos el dictamen recurrido y; en consecuencia, se deja sin efecto la paralización de los procedimientos.

Notifíquese **inmediatamente**.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones